```
 1              .    UNITED STATES DISTRICT COURT

 2                   WESTERN DISTRICT OF NEW YORK

 3
      - - - - - - - - - - - - X          21-CV-0283
 4    MARTIN GUGINO,
                      Plaintiff
 5
                  Vs.                        Buffalo, New York
 6    CITY OF BUFFALO, ET AL,               February 14, 2023
                      Defendant
 7    - - - - - - - - - - - - X

 8
                      TRANSCRIPT OF ORAL ARGUMENT
 9            BEFORE THE HONORABLE LESLIE G. FOSCHIO
                    UNITED STATES DISTRICT JUDGE
10

11                    LIPSITZ GREEN SCIME CAMBRIA LLP
                      BY: MELISSA DOROTHY WISCHERATH, ESQ.
12                    BY: RICHARD P. WEISBECK, ESQ.
                      42 Delaware Avenue
13                    Suite 120
                      Buffalo, New York 14202
14                    Appearing on behalf of the Plaintiff

15
                      HODGSON RUSS LLP
16                    BY: HUGH M. RUSS III, ESQ.
                      The Guaranty Building.
17                    140 Pearl Street
                      Suite 100
18                    Buffalo, New York 14202
                      Appearing on behalf of the Defendant
19

20

21

22

23                    COURT REPORTER:Brandi A. Wilkins
                          scalisba@gmail.com
24                    Kenneth B. Keating Federal Building
                      100 State Street, Room 2120
25                    Rochester, New York 14614
```

 1           THE CLERK:  All rise.  You may be seated.

 2  On the record Gugino versus the City of Buffalo

 3  21-CV-283.  We're here on oral argument for

 4  plaintiff's motion to compel and defendant's motion

 5  for a protective order.  Counsel, please state your

 6  name and who you represent.

 7           MR. WEISBECK:  Richard Weisbeck representing

 8  Martin Gugino.

 9           MS. WISCHERATH:  Good afternoon.  Melissa

10  Wischerath representing plaintiff Martin Gugino.

11           MR. RUSS:  Good afternoon, Your Honor.  Hugh

12  Russ from Hodgson Russ.  We represent the defendants.

13           THE COURT:  Well, um interesting motions,

14  um, but we'll take Mr. Weisbeck and Ms. Wischerath's

15  motion first.

16           MR. WEISBECK:  Thank you, Your Honor.

17           THE COURT:  You can be seated.

18           MR. WEISBECK:  Well, thank you, Your Honor.

19  Um, Your Honor, um, this is a pretty simple motion.

20  It's our position that the defendant violated Rule 30

21  of the Federal Rules of Civil Procedure objecting to

22  the use of one word in a question which is of garden

23  variety form objection and on the record claiming that

24  it was argumentative, improper and clearly improper.

25  And it's clear that these arguments do not meet the

1    requirements set forth in Rule 30 for directing a

2    party not to answer a deposition question.  Um.

3              THE COURT:  Nor in my guidelines.

4              MR. WEISBECK:  I'm sorry?

5              THE COURT:  Nor in my guidelines.

6              MR. WEISBECK:  Yes, Your Honor.  Absolutely.

7    Now, um, there's been a lot of statements made in the

8    defendant's opposing papers about my motives and my

9    questioning of this witness, and I can address that at

10   this time as well, Your Honor.

11             THE COURT:  Um.

12             MR. WEISBECK:  If the Court pleases or do

13   you want me to wait until the defendants advance their

14   arguments?

15             THE COURT:  Sure.

16             MR. WEISBECK:  Wait?

17             THE COURT:  Yeah.

18             MR. WEISBECK:  Okay.  So at least that with

19   respect for our motion, Judge, it's a pretty simple

20   motion on a garden variety, um, form objection, and as

21   I put in my moving papers, if an attorney for a party

22   can act as the gate keeper dictating what words

23   another attorney can use or select for um his or her

24   questioning of a witness or a party, then you know,

25   that disrupts the entire deposition, and as I said

1   both at the time of this um -- this dispute and in my

2   papers, if I have a question that's in an improper

3   form and I don't correct it, it's my risk because at

4   trial if the Court sustains that objection, I won't be

5   able to use that question and answer at trial.  So

6   that's my risk, and so I don't even see why we should

7   have to be here when there's an objection to one word

8   in a question.

9            THE COURT:  Okay.  Thank you.  Um, Mr. Russ?

10            MR. RUSS:  Thank you, Your Honor.  Let me

11   say a couple of things first.  As you know from our

12   cross motion, um, and my declaration in support of it,

13   this wasn't one blatantly improper question, although

14   the question was blatantly improper.  This was part of

15   a series of questions designed to um harass the

16   witness, and um for most of them, I did object to the

17   form and allowed the witness to answer, but it was

18   going too far and that's why I stopped the process.

19            I am aware of the federal rules.  I'm aware

20   of what I've called the Foschio rules, and only under

21   very extreme circumstances is a lawyer allowed to

22   direct a witness not to answer, and Rule 30 supplies

23   the rules -- or the guidelines for that determination,

24   and um, I would simply say that the Magistrate Judge

25   Payson opinion um which we've cited in our papers

1     really I think captures the spirit of the rules and

2     even the Foschio guidelines.

3             Depositions are to be conducted in a manner

4     that simulates the dignified and serious atmosphere of

5     the courtroom, and conduct that is not permissible in

6     the courtroom during the questioning of a witness is

7     ordinarily not permissible at a deposition.  The

8     specific question never would be permitted at trial,

9     Your Honor, and many of the questions that preceded it

10    would not be either.

11            THE COURT:  Well, doesn't -- doesn't that

12    argument reinforce the position of the plaintiff?  In

13    other words, if an objection to form is an objection

14    to form, and if it's not stated, then it's waived and

15    the issue becomes admissibility at trial.  It doesn't

16    -- as I understand the way the Rule 30 works, it

17    doesn't authorize the defending attorney to interrupt

18    the proceeding, the deposition, and to instruct the

19    witness not to answer.

20            MR. RUSS:  I must respectfully disagree,

21    Your Honor.  Rule 30 um allows a witness or the

22    proponent of a witness to um interrupt the deposition

23    when the questioning is designed to unreasonably

24    annoy, embarrass or oppress the deponent and that's

25    what was happening there.

1          THE COURT:  Yeah, but you did -- as I read

2     your statements in the -- in the record of the

3     deposition and up to the point at which Mr. Um

4     Weisbeck um queried the witness about the photograph

5     and asked whether there was an assault -- asked the

6     witness to identify the officer who committed that

7     assault upon the citizen peacefully demonstrating

8     against the police violence -- against police

9     violence, your -- nothing in your behavior at the

10    deposition suggested that there was any annoyance or

11    undue pressure on the -- on the witness.  Did I miss

12    something?

13         MR. RUSS:  Did I object on that basis?

14         THE COURT:  Yes.

15         MR. RUSS:  Is that what you are saying?

16         THE COURT:  No.

17         MR. RUSS:  No.  I objected that the question

18    was blatantly improper.

19         THE COURT:  No.  You objected on the grounds

20    that -- you didn't use the word blatantly.  You used

21    the word form which was correct.  I mean, I saw

22    several instances of leading questions.  For example,

23    on Page 22 Lines 10 to 11 Mr. Weisbeck asked the

24    witness, So you didn't get the memo that the mayor

25    disbanded the ERT?  That's a leading question, and you

1    objected, but not based on the leading character of

2    the -- of the question.  Compound questions, what was

3    the purpose of the line?  And how does that intersect

4    with what you just said for instance the curfew or in

5    other instances to arrest instigators.  Clearly a

6    compound question and you objected to that as well, I

7    think.

8            Um, page 25.  Let me just see here.  25 at

9    Lines 22, um, Page 26.  How does this intersect with

10   the -- and you objected to form and you said you may

11   answer.  So I think that's the point, that your -- the

12   basis for your series of objections up to the point of

13   which we are talking about in the -- with regard to

14   identity of the officer who was allegedly assaulting

15   according to Mr. Weisbeck the citizen seems to me to

16   underscore that you had no problem with the -- with

17   the idea of -- of overbearing conduct by Mr. Weisbeck

18   but rather you were objecting as to form.

19           So I don't understand why you interpret a

20   series of form objections -- questions that obviously

21   I think everybody agrees, probably Mr. Weisbeck

22   agrees, I'm not asking him to comment about it, that

23   they were objectionable as to form and he didn't

24   attempt to rephrase.  So he's, perhaps that's up to

25   the district judge at trial, lost the opportunity to

1   use the response for any purpose at the trial that
2   Rule 30 allows.
3          Um, so I'm -- I'm not understanding.  You're
4   leaping from objections as to form to overreaching
5   conduct which triggers a right to ask for a
6   termination of the deposition, and you didn't ask for
7   that anyway.  You -- your papers talk about um issues
8   of relevancy, the question is not designed to obtain
9   relevant evidence.  That's not the law.  There's no
10  objection -- there's no right to forbid a witness from
11  answering a question that seeks irrelevant
12  information; is there?
13         MR. RUSS:  If that were the only problem
14  with the question --
15         THE COURT:  Well, the only --
16         MR. RUSS:  No.
17         THE COURT:  Go ahead.
18         MR. RUSS:  I have two answers for you, Your
19  Honor.  First the short one then the longer one.  The
20  short one is I did in fact object that the specific
21  question was, this is on Page 40, argumentative,
22  improper and blatantly improper.  The longer answer,
23  Your Honor, is that Rule 30 contemplates not only the
24  admissibility of evidence at trial but also the
25  treatment of the witness being deposed, and my

1   objection and my subsequent motion under Rule 30 is to

2   the way the witness was being treated, and that the

3   questions were escalating in impropriety, and it was

4   an obvious attempt to cause my witness to lose his

5   temper on a video camera.

6           THE COURT:  Did he lose his temper?

7           MR. RUSS:  He did not.  Only his lawyer did,

8   Your Honor.

9           THE COURT:  Well, that's unfortunate, but

10  that's not a grounds for a protective order.

11          MR. RUSS:  To harassing um -- excuse me --

12  annoying, embarrassing or oppressing the deponent?

13          THE COURT:  You honestly think that all the

14  questions he was asking about the military background

15  of the witness and his tattoos were annoying,

16  embarrassing or oppressive?

17          MR. RUSS:  Asking him, for example, if he

18  was trained to kill citizens, asking him if he was

19  trained to kill and shoot guns?

20          THE COURT:  Did you object on that ground?

21          MR. RUSS:  I did.

22          THE COURT:  Did you object on that ground?

23          MR. RUSS:  I did.

24          THE COURT:  You did?  Well, show me in the

25  record where you did that.

1            MR. RUSS:  Every one of them I objected to

2       the form of the question and allowed --

3            THE COURT:  Yeah, to the form, but not to

4       the basis -- not on the grounds that it was

5       oppressive, annoying, unreasonably annoying,

6       unreasonably embarrassing or oppressive.  You didn't

7       object on that basis.

8            MR. RUSS:  I did not quote that language,

9       Your Honor.

10            THE COURT:  Well, that's --

11            MR. RUSS:  But if the magic language is the

12       appropriate basis for an objection then --

13            THE COURT:  Well, it certainly is in the

14       question -- in the context of a challenge to a

15       deposition question.  I mean, your --

16            MR. RUSS:  So --

17            THE COURT:  The law is that relevancy is not

18       a basis to object to a question.  Relevancy is always

19       preserved.

20            MR. RUSS:  I understand that.

21            THE COURT:  Harassment -- harassment if

22       your -- nobody seems to be aware of Judge Gorenstein's

23       decision in 2012 in Severstal Wheeling Inc. Versus WPN

24       Corporation.  That's S-E-V-E-R-S-T-A-L Wheeling Inc.

25       Versus WPN Corporation 2012 West Law 1982132 at Star 2

1  where um Judge Gorenstein rejects the idea that a

2  ground for instructing a witness not to answer is that

3  the questions were plainly irrelevant and designed to

4  harass the witness.

5       I mean, what could be clearer, and there is

6  case law elsewhere I unfortunately didn't bring my --

7  my handy dandy handbook.  Did you bring it?  No.  I

8  left it up in the office unfortunately, wherein the

9  Baker McKee authors of the Federal Rules Handbook cite

10  to other jurisdictions for the proposition that a

11  question that is intended to harass the witness is not

12  a grounds to direct the witness not to answer.  The

13  Rule 30 makes crystal clear that the only grounds to

14  do that are to preserve a privilege or to enforce a

15  limitation that the Court has previously imposed.

16  Isn't that the law, Mr. --

17       MR. RUSS:  That's part of the law, Your

18  Honor.

19       THE COURT:  Well, what's the other part that

20  I'm missing here?

21       MR. RUSS:  That a deposition -- this is Rule

22  30D3A, at any time during a deposition the deponent or

23  a party may move to terminate or limit it on the

24  ground that it is being conducted in bad faith.

25       THE COURT:  Yup.  I --

1          MR. RUSS:  Or in a manner that unreasonably

2     annoys, embarrasses or oppresses the deponent or

3     party.

4          THE COURT:  But you didn't -- but

5     interestingly, with great respect for learned counsel

6     stature in the legal community, but you did not at the

7     deposition say that you were terminating the

8     deposition to seek a motion for -- on that basis.  It

9     was Mr. Weisbeck that terminated the deposition in

10    order to get a ruling on the main question and that is

11    what is the -- what types of questions are authorized

12    to permit an opponent to object -- to instruct the

13    witness not to answer, and I'm having difficulty

14    understanding your point.

15         MR. RUSS:  I'm not making myself clear, Your

16    Honor.  I apologize.  First of all, the basis for

17    stopping the deposition was one question.  It wasn't a

18    series of questions.  It wasn't the process.  It was

19    I'm stopping this deposition and the other two that we

20    have scheduled for this week because you won't let me

21    answer one question.

22         The appropriate procedure, Your Honor, I

23    suggest is that the question be marked for later

24    determination by the Court and the deposition proceed

25    on other questions and other subjects.  Stopping three

1    depositions for one bad question is not appropriate,
2    Your Honor.
3            THE COURT:  Well, um, Mr. Weisbeck felt that
4    he was going to be asking questions like this in
5    other -- for other deponents and felt that there was a
6    need to get clarification.  I -- I -- I don't know
7    that there's any case law against it.  To the
8    contrary, there's case law that I recall that allows
9    the examining attorney to seek judicial guidance as to
10   the question at hand, namely what is this -- what is
11   the authority for an instruction not to answer, and so
12   I'm at a loss to understand the problem here, Mr.
13   Russ, to be truthful.
14           I read over the transcript.  I honestly
15   don't see any overreaching behavior by Mr. Weisbeck.
16   I don't see any unreasonable annoyance.  I don't see
17   any embarrassment, um, or oppressiveness in any of the
18   questions that he was promulgating.  I don't see it.
19   I'm sorry.  And the context in which Judge Payson
20   ruled in her um decision in the -- in the Marset case,
21   that was a pro se litigant that she was sanctioning
22   and going after; right?
23           MR. RUSS:  Yes, Your Honor, but just because
24   Mr. Weisbeck's conduct doesn't rise to that level of
25   egregiousness if that's a word doesn't mean it was

1    appropriate or correct.

2          THE COURT:  Well, again, the question is

3    whether it's -- rises to the -- or falls to the level

4    of annoyance, embarrassment or oppression, and I don't

5    see any indication of it whatsoever, and nor do I see

6    any basis for finding anything akin to what Judge

7    Payson found in the Marset case which prompted her to

8    sanction the plaintiff, and um, so I don't see the

9    case -- the Marset case as have anything to do with

10   the situation at hand.  Um, it's -- it's -- as far as

11   Monell is concerned let's -- all right.  So we've

12   talked about the -- the plaintiff's motion.  Let's

13   talk about your motion.

14          MR. RUSS:  Okay.  Your Honor, obviously

15   we've spent a fair amount of time discussing the first

16   ground for the motion.  The second ground, Monell,

17   this Court will recall its earlier decision on Monell

18   issues, and this Court ordered that Monell discovery

19   would await um further proceedings.  So my argument is

20   relatively simple, Your Honor.  This particular

21   question was designed to obtain information concerning

22   other police officers on another date not involving

23   any of the defendants in this case.  Um, that's

24   clearly Monell evidence or Monell discovery in so --

25          THE COURT:  Why is that?

```
 1            MR. RUSS:  Because it's --
 2            THE COURT:  How does that go to the City's
 3   liability?
 4            MR. RUSS:  It goes to what procedures -- it
 5   was going to what procedures were followed, what
 6   police officers were doing.
 7            THE COURT:  But Monell has to do with the
 8   municipal liability.
 9            MR. RUSS:  Right, and it's based upon
10   patterns and practice, based upon procedures on
11   training and instruction, and those are all Monell
12   areas of questioning.
13            THE COURT:  Well, it certainly wasn't a
14   ground that you put forth at the deposition; was it?
15            MR. RUSS:  Not unless you count my language
16   blatantly improper.
17            THE COURT:  Okay.  Was that in your mind
18   when you uttered that word blatantly that it was a
19   Monell problem that violated my ruling on limiting the
20   discovery to Monell related issues affecting the
21   city's burden to produce?
22            MR. RUSS:  That's a good question, Your
23   Honor, because during the deposition my colleague who
24   was there with me was passing me notes saying he's
25   asking Monell questions.  So it was in my mind but --
```

```
 1              THE COURT:  Okay.
 2              MR. RUSS:  -- no, I can't honestly say that
 3     it was the basis for this specific objection.
 4              THE COURT:  Okay.
 5              MR. RUSS:  To this specific objection.
 6              THE COURT:  So your motion is broad enough
 7     to include an objection based on -- well, let's see.
 8     Well, I guess it's a straight up issue.  It doesn't
 9     really come within the context of Rule 26C.  It comes
10     within the context I guess of just general judicial
11     supervision of discovery and the enforceability of my
12     ruling in your favor on the Monell restriction.
13              MR. RUSS:  Yes, Your Honor.
14              THE COURT:  So let's --
15              MR. RUSS:  Discovery is --
16              THE COURT:  Let's hear from the plaintiff
17     about the Monell issue.
18              MR. WEISBECK:  Just let me start first.
19     Your Honor, may I just speak for a moment before Ms.
20     Wischerath speaks on this issue?
21              THE COURT:  Okay.
22              MR. WEISBECK:  Is the Court essentially
23     saying other than what's in my affidavit in opposition
24     to the defendant's motion to get a protective order on
25     my question to these defendants that you don't need to
```

1    hear anything else or for me to further explain my

2    good faith basis for each one of those questions that

3    I set forth in my affidavit because it's painful to be

4    accused in federal court of acting in bad faith when

5    I'm questioning a defendant in a civil rights claim,

6    and I had a basis for every one of those questions

7    including the tattoos and I explained that in my

8    affidavit.

9         THE COURT:  I'll be candid with you.  I --

10    lawyer to lawyer, I had a hard time grasping this,

11    where you were heading with those questions and what

12    your purpose was, but I defer to your expertise in the

13    context of this unusual lawsuit.

14         MR. WEISBECK:  I appreciate that, Judge.

15         THE COURT:  So -- and the federal discovery

16    is liberal to say the least.  So far be it from me to

17    second guess your motivations in asking those

18    questions.  I'm not sure I really could fathom why you

19    were involved in his tattoos or why you were involved

20    in his military background, but far be it from me to

21    second guess your overall strategy here, Mr. Weisbeck,

22    and I don't think I have any authority to do so.

23         MR. WEISBECK:  I appreciate that.  Thank

24    you, Your Honor, and it felt difficult even that I

25    felt necessary -- it felt necessary for me to reveal

1    the basis for each of those questions because that is

2    both discovery strategy and trial strategy.

3               THE COURT:  Well, that's right.

4               MR. WEISBECK:  And because I -- this

5    motion's broad to say that I acted in bad faith with

6    those motions I felt compelled to actually reveal some

7    of my strategy, and that is not something I like to

8    do.

9               THE COURT:  Well, I'm not asking you to at

10   this point.  So let me just get the -- where do I find

11   your proffered statements for that?

12              MR. WEISBECK:  Oh.  Well, it's in my

13   affidavit.

14              THE COURT:  In your declaration?

15              MR. WEISBECK:  Yes, yes.

16              THE COURT:  Your attempt to get under his

17   skin so to speak?

18              MR. WEISBECK:  Right, and the tattoo

19   questions were -- we have several videos --

20              THE COURT:  Yeah.

21              MR. WEISBECK:  -- that have um of -- by

22   police officers where only their arms and other

23   people's arms are showing and some people's faces but

24   not the person who is doing the videoing and so --

25              THE COURT:  So your purpose was to get

1    identification --

2              MR. WEISBECK:  Yes.

3              THE COURT:  -- evidence?

4              MR. WEISBECK:  Right.

5              THE COURT:  And contrary to the defendant's

6    view or interpretation that it was not Monell intended

7    to -- I'm using a shorthand way of describing the

8    issue here which is clumsy on my part.  I'm sorry for

9    doing that, but I can't think of a quick way to

10   express it with fewer words.  But you were simply

11   focussing on the question at hand and that is in

12   accordance with my ruling that the scope of discovery

13   was limited to the liability of the three primary

14   actors here.

15             MR. WEISBECK:  Well, what I -- the tattoos

16   were about identifying people and this particular

17   defendant came in with a jacket and long sleeves, and

18   instead of being intrusive and asking him to take his

19   coat or his jacket off and roll up his sleeves, I

20   asked him just what are your tattoos so I can then

21   compare his description to these videos.  It was

22   identification purposes, Your Honor, and I've

23   justified my other questioning as well along those

24   lines, and even the idea that somehow I'm trying to

25   get under someone's skin because I'm conducting a

1    video deposition, video depositions are normal and

2    routine for our office.  We do it very frequently.

3              THE COURT:  They're normal and routine --

4              MR. WEISBECK:  Right.

5              THE COURT:  -- throughout the legal

6    profession.

7              MR. WEISBECK:  Right, and the defense is

8    making acclaim that in advance because I took a video

9    deposition that was a clear signal I'm trying to

10   harass, annoy or embarrass this defendant.

11             THE COURT:  I didn't catch that point coming

12   out of the --

13             MR. WEISBECK:  That was one of the first

14   paragraphs of the defendant's declaration that I gave

15   a clear signal of my intent to annoy, harass and

16   embarrass.

17             THE COURT:  Oh, yes.  I see that.  I agree

18   with you now, yes.

19             MR. WEISBECK:  And um --

20             THE COURT:  I'm just rereading Mr. Russ's

21   declaration.  Intended to force Officer McCabe to lose

22   his temper.  I -- I'm not trying to be little your

23   position, Mr. Russ, at all here, but I found that

24   statement to be above and beyond based on my reading

25   of the record.  It seemed to me that -- well, let's

1    go -- let's hear from Ms. Wischerath on the Monell

2    issue.

3          MS. WISCHERATH:  Thank you, Judge.  Um, so

4    the basis for the bifurcation motion was specific to

5    um discovery requests, and when we first got the

6    motion that issue was raised where I said I don't even

7    understand the scope of what they're seeking to

8    bifurcate, and in response there was a July

9    correspondence that was submitted by Mr. -- I'm going

10   to say his name wrong -- Peter Sahasrabudhe --sorry

11   about that.  But Mr. -- counsel for defendants put in

12   a um response that says here's the discovery that

13   we're specifically talking about, Your Honor, and

14   focus the issues on the bifurcation.  They all had to

15   do with document demands.

16         THE COURT:  That's right.  They did.

17         MS. WISCHERATH:  And there was never um

18   anything before any of the parties that said, you

19   know, we're also going to take the position that any

20   questions which is from their current motion at 54-4

21   that we should only be able to ask questions at

22   depositions "only to whether or not Martin Gugino

23   actually suffered a constitutional injury on June 4,

24   2020."  Again, I don't think that -- I think that's

25   vague.  I think it's overly broad.  I honestly don't

```
 1   even know what that means in relationship to what
 2   questions we're allowed to ask, what questions we're
 3   not allowed to ask, if we're --
 4            THE COURT:  Well, I agree.  The order
 5   doesn't speak to deposition practice, and here we are
 6   now.  We're talking about it.  Well, can't think of
 7   everything I suppose, but um --
 8            MS. WISCHERATH:  Even in your order, Judge,
 9   you identified I think it's the last -- the second to
10   last and the last page, you said because of economy,
11   efficiency, I'm going to -- I think there was a
12   quotation in your order and it um was exhibit -- I
13   believe it was Exhibit B in your papers.
14            THE COURT:  Yes.
15            MS. WISCHERATH:  If you look at Page 6, you
16   say when you come --
17            THE COURT:  Wait a minute.  Let me turn to
18   Page 6; okay?
19            MS. WISCHERATH:  Yeah.  When you come to
20   your conclusion, it's the last sentence there.  Um,
21   and you say in turn should plaintiff prevail discovery
22   may proceed without serious risk of loss of evidence
23   as the documents and other records sought by
24   plaintiff's amended first request for production.  You
25   don't say -- I mean, and I think of the context of a
```

1    deposition, obviously memories fade, time.  There's

2    different reasons why that would not apply to a

3    deposition.  I think that's why the motion was limited

4    to documents, and I believe that it was no surprise to

5    plaintiff or defendant or the Court that that was the

6    basis for the motion to bifurcate.  Um.

7          THE COURT:  So by contrast in what you are

8    saying is that the -- the order, although it doesn't

9    speak to the D and O, it doesn't speak to the question

10   of a deposition practice, by process of contrast or

11   elimination, it can't reach it.  That's your point.

12         MS. WISCHERATH:  Yes, Judge.

13         THE COURT:  Well --

14         MS. WISCHERATH:  I also --

15         THE COURT:  What's wrong with that argument,

16   Mr. Russ?

17         MR. RUSS:  Your Honor, I agree at the time

18   of the motion you are addressing document discovery.

19   However, the order is about Monell and Monell

20   discovery, and that order becomes operative in all

21   discovery conducted from that moment on.  So even

22   though the D and O doesn't specifically say this

23   applies to all the depositions you are going to take,

24   it does.

25         THE COURT:  Well, and the question of the --

1  the question regarding the identification of the

2  officers involved in the -- in the encounter with

3  the -- with the non Gugino witness is a Monell related

4  question rather than an individual liability question?

5          MR. RUSS:  I believe it is, Your Honor.

6          THE COURT:  How?

7          MR. RUSS:  Because it's designed to get one

8  witness to comment on the um conduct of another

9  witness.  Officer McCabe had already said that he

10  wasn't present that night, that he was on bereavement

11  leave, that he didn't know the officers involved, that

12  he didn't recognize the officers involved, and then

13  the question arose.

14          MR. WEISBECK:  May I, Your Honor?

15          THE COURT:  So how does that entrench -- how

16  does that trench upon my D and O?

17          MR. RUSS:  Because it's asking for

18  procedures and um actions that were conducted prior to

19  the date of Mr. Gugino's incident leading to discovery

20  about previous procedures, previous activities, um,

21  you know, what -- what these officers were instructed

22  on a different day at a different time.  Um, that's

23  all Monell, Your Honor.

24          MR. WEISBECK:  Judge, just on the particular

25  question and I'll let Ms. Wischerath --

1          THE COURT:  Why don't you let Ms. Wischerath

2     handle it.

3          MR. WEISBECK:  -- talk about Monell but --

4          THE COURT:  She's Ms. Monell here.

5          MR. WEISBECK:  Okay.  I was just asking the

6     name of the particular police officer that was in the

7     photograph.  That was the question.

8          THE COURT:  That's right.  I agree.

9          MR. WEISBECK:  It didn't go to policy or

10    practice or any of that.

11         MS. WISCHERATH:  So I think -- I think maybe

12    it's instructive.  It was useful to me is that in the

13    context of -- instead of talking about Monell in a

14    vacuum, if we actually look at the Monell claims and

15    how do you separate them from the claims against the

16    individual defendants.  I don't see a separation

17    personally.  I think these are intertwined

18    specifically because these Monell claims were crafted

19    to piggy back and mirror the individual claims against

20    the defendant.

21         So the first Monell claim which is that

22    Docket 1 and it's Page 33.  It's about the curfew.

23    Um, and it's specific to Martin Gugino and it said the

24    curfew violated the constitutionally guaranteed rights

25    of plaintiff Martin Gugino goes on to talk about that.

1    So how -- we have an individual claim for the curfew
2    and then we also have a Monell claim for the curfew.
3    If we're not allowed to ask questions about the
4    curfew, then how do we prove either?  I don't know
5    where you --
6              THE COURT:  I think I remember.  In fact, I
7    thought my D and O alluded to that problem actually.
8    I remember that now that you recall it for my
9    recollection.  I recall having that same view of
10   the -- of the issue and I thought I put some language
11   in to that effect, but honestly I didn't think of it
12   before I took the bench, so I'm not able to go in and
13   find it.
14             MS. WISCHERATH:  Yeah.
15             THE COURT:  But --
16             MS. WISCHERATH:  And that's true if you go
17   through each of the four Monell claims.  They're
18   intertwined I would say with individual claims against
19   the defendants as well as against the municipality.
20   These aren't, you know, broad practices or policies.
21   These are very specific.
22             THE COURT:  Well, you don't have a Monell
23   claim against the individuals.
24             MS. WISCHERATH:  That's true.  Sorry if I
25   misspoke.  But the basis for them is intertwined with

 1    the individual defendants.  So if you look at --

 2              THE COURT:  Yeah.

 3              MS. WISCHERATH:  -- you know, the claim for

 4    the curfew, there's the Monell that mirrors that.

 5    There's the excessive force Monell which is count two.

 6    It says the practice --

 7              THE COURT:  Well, I think I've heard enough

 8    about this Monell issue.

 9              MS. WISCHERATH:  Okay.

10              THE COURT:  I think I know enough about

11    Monell.  Certainly, I do, and the -- the scope of my D

12    and O to conclude that the plaintiff has the better

13    part of the argument, Mr. Russ.  I -- I think there

14    are issues that Mr. Weisbeck and Ms. Wischerath have

15    identified which not to use a common term but overlap

16    the municipal liability issue, and furthermore, the

17    thrust of the D and O was certainly tied to document

18    production which was the burdensome problem that you

19    pointed out in your request.

20              So I -- at least insofar as this particular

21    problem is concerned is this deposition problem that

22    we're talking about, I don't see that the -- the

23    thrust of the question that triggered our gathering

24    this afternoon trenches heavily upon the limitation

25    created in the D and O with respect to bifurcation of

1    the Monell discovery issues.  So I'm not inclined to

2    grant the protective order on that basis, Mr. Russ.

3              MR. RUSS:  Thank you, Your Honor.

4              THE COURT:  And so anything further with

5    respect to the underlying motions?

6              MR. WEISBECK:  Not unless you have

7    questions, Your Honor.

8              THE COURT:  Mr. Russ?

9              MR. RUSS:  I do have one question if the

10   Court permits.

11             THE COURT:  Sure.

12             MR. RUSS:  I know the Court isn't in the

13   business of offering advisory opinions, but when we

14   resume these depositions, there will be I'm certain

15   questions that are objectionable.  The Court in its

16   comments and questions today seemed to suggest that

17   grounds for objections should be included, and um --

18             THE COURT:  Well, only for issue -- only for

19   form.

20             MR. RUSS:  So --

21             THE COURT:  You're not obliged to object

22   based on relevancy.

23             MR. RUSS:  Or any of the other --

24             THE COURT:  Well, no.  Form is sufficient,

25   but better to say, well, leading or argumentative or

1    compound.  In terms of good practice, it seems to me

2    that in fairness you want to give your opponent an

3    opportunity to correct; right?

4             MR. RUSS:  That's the reason --

5             THE COURT:  And also you want to lay the

6    foundation for a subsequent ruling by the trial court.

7             MR. RUSS:  That's the reason I'm asking,

8    Your Honor, because --

9             THE COURT:  I'm not directing you how you

10   practice law here.

11            MR. RUSS:  No, I understand that.  I'm just

12   exploring the issue because the federal rules I

13   believe contemplate that under normal circumstances

14   one may object basically only to form and one has to

15   allow his witness to answer.  But if -- if the

16   question strays into um other inappropriate areas um

17   --

18            THE COURT:  Well, that's relevancy and

19   relevancy is not a grounds to direct the witness not

20   to answer, Mr. Russ.

21            MR. RUSS:  Right.  I understand that, Your

22   Honor.  But you asked me --

23            THE COURT:  Well, I'm glad you do now

24   because you didn't when you made your motion.

25            MR. RUSS:  Um.

1         THE COURT:  In all fairness.

2         MR. RUSS:  Relevancy was one of the many

3    issues I attempted to raise as to the impropriety of

4    the question, um, not the only issue.

5         THE COURT:  Which has been -- which is

6    contrary to the case law, Mr. Russ.

7         MR. RUSS:  Okay.  But the case law and the

8    rules also contemplate that a lawyer objecting can

9    only say objection to form, you may answer.  But if a

10   question strays into one of these other areas like

11   30 --

12        THE COURT:  Unless you want to waive the

13   objection, you don't -- you don't say anything.

14        MR. RUSS:  No, but if I were to say, Your

15   Honor, for example, objection to form Rule 30D3A.

16        THE COURT:  No.  No, you don't do that.  You

17   just object to form and you either state the grounds

18   there or as a courtesy to your opponent or you don't,

19   and in which case then you take your chances that

20   the -- the opponent will figure out for himself or

21   herself what the basis is and rephrase as Mr. Weisbeck

22   I'm sure in retrospect wishes he had on several of the

23   occasions that I just pointed out to him from having

24   read the record myself and determining which of his

25   questions were objectionable on any grounds.

1         But certainly, we're getting wrapped around

2   our axel here, Mr. Russ.  The bottom line is that

3   there is no basis in the federal rules for an

4   instruction to a witness not to answer a question

5   except for the purpose of enforcing a valid privilege

6   or a prior court order limiting the scope of the

7   examination.  Full stop.

8         MR. RUSS:  We've been tangled around our

9   axel since yesterday at 11:15, Your Honor.

10        THE COURT:  Well, I'm glad to be a

11  participant in the process of untangling it this

12  afternoon.

13        MR. RUSS:  And I appreciate your efforts in

14  that regard.  I would just be remised if I didn't say

15  um a lawyer defending a deposition under the federal

16  rules is caught in a bad spot because it's -- if he

17  objects by saying more than objection to form and he

18  starts to explain his objections, then the other side

19  says no speaking objections, you can't -- you can't

20  say that.

21        THE COURT:  You can't coach and that's what

22  my -- that's what my guidelines focus in on.  No

23  coaching.

24        MR. RUSS:  But asserting an objection on a

25  federal rules basis or a privilege basis or another

1    appropriate basis sometimes necessitates saying more

2    than objection to form, and that's where I'm caught.

3            THE COURT:  Such as?  Give me an example.

4            MR. RUSS:  Um, if -- if the -- if the

5    question is designed, for example, to inquire into

6    privileged conversations or privileged communications.

7            THE COURT:  Well, then you -- then you

8    object based on privilege and you preserve your

9    objection, and if the opponent persists, then you --

10   you adjourn the deposition and come to court for a

11   ruling.

12           MR. RUSS:  Okay.  So um, just because I'm a

13   little slow and my axel is still a little tangled,

14   what the Court seems to be suggesting is that minimal

15   explanation be provided for certain objections but not

16   full-fledged argument.

17           THE COURT:  No.  I'm not telling you how to

18   practice law at all.  I'm just giving you examples

19   based on my experience of dealing with these issues

20   occasionally, thank gosh, very occasionally we have to

21   deal with one and here we are in this -- at this stage

22   of my career dealing with an issue, and no, I'm not

23   going to tell you what to do here, Mr. Russ.  You do

24   your homework and you figure it out for yourself what

25   you -- how you want to practice law.  I'm just

1    pointing out what the cases say to me and the

2    commentators about the case law under Rule 30, that

3    the better practice is to give your opponent an

4    opportunity to make the correction and also lay the

5    foundation for a successful objection before the trial

6    shows up in court, and that's it.  I'm not -- not in

7    the business of telling people how to conduct

8    themselves.

9              I only -- I only -- I guess it's like, you

10   know, somebody once said about something that they

11   know it when they see it.  Same thing here.  I mean,

12   when there's harassment that goes to oppression and

13   triggers a -- a right under Rule 30 um D3, I -- a

14   judge knows it when he or she sees it, and I don't see

15   it here.  I haven't seen it from the get go.  I tried

16   to see it, but I couldn't, Mr. Russ.  I've read the

17   papers, considered the arguments, and for the reasons

18   discussed on the record, the plaintiff's motion is

19   granted.  The defendant's motion is denied.  And

20   you're not seeking sanctions here; are you, Mr.

21   Weisbeck?

22             MR. WEISBECK:  No.  Of course not, Your

23   Honor.

24             THE COURT:  Well -- and that's it.  And if

25   you want a record of the transcript, you're free to

1    order it and take an appeal within ten days.  So now,

2    as far as resuming the deposition is concerned, I saw

3    some language in your papers that you were not

4    agreeing to bring the -- Mr. McCabe back for a further

5    completion of the deposition.

6         MR. RUSS:  No.  That's not correct, Your

7    Honor.  I'm -- I understand the Court's ruling and

8    certainly I'll bring him back.

9         THE COURT:  Okay.

10         MR. RUSS:  Um, what I was concerned about

11   was that we had three depositions scheduled for this.

12         THE COURT:  Well, that's why we're having

13   the argument today because I didn't want to blow up

14   the schedule that you had agreed upon, and knowing

15   these officers are busy and difficult to line up from

16   experience, I thought, well, let's -- let's give it an

17   expedited determination in which I have tried to do

18   this afternoon.

19         MR. WEISBECK:  Thank you, Your Honor.  We

20   appreciate that.

21         THE COURT:  So you're going to go forward

22   with the depositions for the rest of the week and

23   bring back --

24         MR. WEISBECK:  Well, I was going to talk

25   with Mr. Russ about it because we want to finish Mr.

1    McCabe first.  We had a very um -- there's certain

2    reasons.

3              THE COURT:  So you've got to reschedule them

4    anyway.

5              MR. WEISBECK:  Him first.  Now, he --

6              THE COURT:  Well, you can't because you have

7    one tomorrow and then one later in the week.

8              MR. WEISBECK:  Right.  I was going to ask

9    Mr. Russ if we could move McCabe until tomorrow, the

10   next guy to Thursday -- or to Friday so that we can

11   continue on.

12             THE COURT:  Well, you -- you try to work it

13   out the best you can.  Don't -- try to avoid getting

14   me involved; okay?

15             MR. WEISBECK:  We will try, Your Honor.

16   Thank you.

17             THE COURT:  All right.  So anything further

18   for the plaintiffs, Mr. --

19             MR. WEISBECK:  No, Your Honor.

20             THE COURT:  -- Weisbeck?  Ms. Wischerath?

21             MS. WISCHERATH:  No, thank you.

22             THE COURT:  For the defendants, Mr. Russ?

23             MR. RUSS:  No, Your Honor.  Thank you.

24             THE COURT:  Okay.

25             MR. RUSS:  And I do appreciate the Court's

1    expediting this process.

2              THE COURT:  Well, that's what we are here

3    for.  All right.  We are adjourned.

4              (Proceeding concluded at 4:54 p.m.)

5

6

7              **CERTIFICATE OF COURT REPORTER**

8

9              I certify that this is a true and accurate

10   record of proceedings in the United States District

11   Court for the Western District of New York before the

12   Honorable Leslie G. Foschio on February 14, 2023.

13

14   S/ Brandi A. Wilkins

15   Brandi A. Wilkins

16   Official Court Reporter

17

18

19

20

21

22

23

24

25