UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARTIN GUGINO,

                        Plaintiff,

v.

CITY OF BUFFALO, *et al.*,

                        Defendants.

_____

**RESPONSE DECLARATION OF COUNSEL (Non-Party Witness J. Evans)**

Civ. No. 21-cv-283-LJV-LGF

      RODNEY O. PERSONIUS, Esq., of counsel to Personius Melber LLP, submits the following Declaration in response to the motion on the part of counsel for Plaintiff, dated January 12, 2024 (Doc. 92), seeking various forms of relief, including sanctions, with respect to the deposition of John Evans, President, Buffalo Police Benevolent Association ("PBA"):

      1.    Contrary to the arguments advanced by counsel for Plaintiff, the actions taken by Declarant during the deposition of Mr. Evans on January 12, 2024 arose from a good faith effort to apply Federal Rule of Civil Procedure 32(d)(3)(A); that is, raising an objection regarding a witness's competency in order to avoid waiver and afford the contemporaneous opportunity for correcting the record.

      2.    The conduct at issue constituted neither coaching of Mr. Evans, obstruction, nor an attempt "to be creative with the facts." *Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D.Pa. 1993).

      3.    By comparison, as detailed below, Declarant's interactions with counsel for Plaintiff over the past 2-1/2 years, while only involving the months of August and September 2021, and December 2023 and January 2024, have been characterized by conduct that, respectfully,

implicates the considerations expressed in Rules 5, 11, 14, 15, 17, and 20 of the District's <u>Civility Principles and Guidelines</u>.

4. In order to fairly evaluate the merits of the pending application on the part of Plaintiff's counsel, consideration of the complete record of interactions between counsel with respect to the Evans third-party subpoena is necessary.

5. That record is set forth below, and supported by the accompanying exhibits.

### I. DECLARANT'S BELATED APPEARANCE ON BEHALF OF MR. EVANS

6. The third-party deposition subpoena at issue, which is addressed to "President John Evans, Buffalo Police Benevolent Association," is annexed to the motion papers of Plaintiff's counsel as **Exhibit E**.

7. While dated May 27, 2021, Declarant did not become aware of this subpoena, which seeks both documents and testimony, until mid-August 2021.

8. Prior to that time, the matter was being handled by Thomas Burton, Esq.

9. Due to the fact we regularly handle matters for the Buffalo PBA, and he seldom practices in federal court, Mr. Burton asked that Declarant's law firm assume responsibility for this matter.

10. Annexed as **Exhibit A** is an email thread of communications between Declarant and counsel for Plaintiff between August 17 and August 28, 2021.

11. This thread discloses that an introductory email was sent to Plaintiff's counsel on August 17, 2021, reflecting Declarant's understanding the subpoena at issue concerned the Buffalo PBA (as compared to Mr. Evans, individually).

12. In response, on August 19, 2021, opposing counsel observed that a response to the subpoena "has long since passed so we are planning on making a motion to the Court."

2

13. On the next day, August 20, Declarant sent an email to both attorneys representing Plaintiff, Melissa Wischerath, Esq. and Richard Weisbeck, Esq., stating that Union President Evans was taking a brief vacation, but Declarant would be meeting with him in five days "to review your document subpoena and the Union's response."

14. Then, on August 25, 2021, Declarant sent a follow-up email to both attorneys, confirming a meeting had been held with Mr. Evans and requesting a call be scheduled for the following day to discuss subpoena compliance.

15. After there was no response to this communication, another email was sent to the attorneys on August 27, 2021 by Declarant, which explained that Declarant had a vacation planned for the following week, but would be available to confer both for the remainder of August 27 and also on the morning of Saturday, August 28, 2021.

16. On August 28, 2021, Ms. Wischerath, without acknowledging Declarant's three most recent emails regarding document production and Declarant's planned vacation, sent an email which curtly stated the following: "Mr. Evans' deposition is Wednesday. Will you be attending?"

17. Within an hour, also on August 28, 2021, Declarant responded to this email, reiterating Declarant's unavailability the following week, referencing the outstanding document production issues, and requesting the Evans deposition be postponed to another date in September. The email additionally stated that Declarant would be available the remainder of the morning of August 28 if Ms. Wischerath wished to discuss the matter.

18. When this email was not answered, nor a phone call received from counsel, another email was sent to both Ms. Wischerath and Mr. Weisbeck at 12:58 pm on August 28, 2021, underscoring Declarant's unavailability the following week, and assuring both attorneys that,

while on vacation, Declarant would nonetheless be checking emails. As well, Declarant's cell phone number was set forth in the email.

19. The next communication from either of these attorneys was a letter sent while Declarant was away on vacation by Mr. Weisbeck, dated September 2, 2021, which is annexed as **Exhibit B**.

20. In his correspondence, Mr. Weisbeck first referred to a prior telephone conversation, which had taken place on August 19, 2021. In that call, he had simply reiterated that the Union's response to the document subpoena was long overdue, and he intended to engage in motion practice. The Weisbeck letter stated that no time extension had been given and, accordingly, he intended to move forward for "penalties" regarding both the nonresponse to the document portion of the subpoena and the nonappearance of Mr. Evans for examination on September 1, 2021.

21. As noted, while this letter did make mention of Declarant's prior email correspondence, Mr. Weisbeck did not acknowledge the more recent emails by Declarant indicating that, due to a pre-existing vacation commitment with family, Declarant was not in a position to appear with Mr. Evans for a deposition on September 1, 2021.

22. Despite having been provided Declarant's cell phone number on August 28, 2021 and knowing Declarant would be checking his email while away, neither attorney bothered to inform Declarant that the request to adjourn the September 1, 2021 Evans deposition was being refused.

23. After not hearing from either attorney, and not having received any motion pleadings over the next two weeks, Declarant again emailed counsel on September 14, 2021. A copy of this email is annexed as **Exhibit C**.

24. Declarant announced that compliance with the document portion of the third-party subpoena would be provided by the end of that week. Reference was also made to the emails regarding Declarant's unavailability the first week of September 2021, observing that, had Declarant been informed Mr. Weisbeck insisted on proceeding with the Evans examination on September 1, arrangements would have been made for the witness to appear with other counsel. After reiterating the witness's availability for the remainder of September, reference was then made to the Amended Case Management Order (Doc. 21) for the Gugino lawsuit, reflecting a revised cutoff date for fact depositions of October 1, **2022** and for all fact discovery of June 30, **2023**.

25. On September 17, 2021, under cover of a letter bearing that date, a document production was provided by hand delivery to counsel for Plaintiff, consisting of in excess of 1,000 pages of written material. A copy of this covering correspondence is annexed as **Exhibit D**.

26. Thereafter, no motion practice was engaged in by opposing counsel regarding this matter, nor was any effort made for more than two years to schedule the Evans deposition.

27. Annexed as **Exhibit E** is an email thread covering the period December 7, 2023 through January 10, 2024.

28. This thread reveals that the next communication by counsel for Plaintiff with Declarant occurred on December 7, 2023, consisting of an email from Ms. Wischerath which proposed a deposition date for Mr. Evans of January 5, 2024.

29. On that same date, Declarant telephoned Ms. Wischerath to discuss both the scheduling of the Evans examination and her willingness to provide proposed topic areas to be covered at the deposition pursuant to Rule 30(b)(6). The latter issue was not resolved during this conversation.

30. On December 20, 2023, Plaintiff's counsel sent an email stating that January 12, 2024 was a convenient date for the Evans deposition.

31. The email thread annexed as **Exhibit E** reflects that a copy of the underlying subpoena was then requested by Declarant and forwarded by Ms. Wischerath on December 22, 2023.

32. On the next day, December 23rd, Declarant sent an email to Ms. Wischerath confirming the January 12, 2024 examination date, and again raising the question of whether a Rule 30(b)(6) topic outline would be provided.

33. Shortly thereafter, on December 23, 2023, Ms. Wischerath responded, pointing out that the examination of Mr. Evans was "just an individual deposition, not a corporation pursuant to 30(b)."

34. On that same date, Declarant forwarded a response email stating that the underlying subpoena had been considered to be "directed to the PBA, which was why we produced the mass of PBA records 15 months ago." (The production actually had been 27 months earlier.) The observation was made that, had this subpoena been considered as having been directed to Mr. Evans individually, no records would have been produced. Ms. Wischerath was asked to reconsider her position.

35. On December 26, 2023, Declarant forwarded copies of prior correspondence between the parties to Ms. Wischerath in which each described the subpoena as being directed to the Buffalo PBA. This email was characterized as a "good faith attempt" to resolve the issue.

36. This thread next discloses that a follow-up email was sent by Declarant on January 3, 2024, requesting an update on the 30(b)(6) request.

37. Later on January 3, Ms. Wischerath responded, questioning the nature of the motion Declarant mentioned might be filed; that is, a motion to compel the taking of a Rule 30(b)(6) deposition of the PBA or to "quash the current subpoena directed to Evans[.]"

38. Declarant sent a response email, also on January 3, reiterating that the subpoena in question was considered to be directed to the PBA, which was the fashion in which it had been treated by the parties from the outset. Ms. Wischerath was reminded that the subpoena was directed to a non-party, its purpose was unclear in the context of the pending litigation, and that "disclosing even in a general way the subjects involving the PBA" to be addressed at the examination would be helpful.

39. After Declarant sent a reminder email on January 4, 2024, Ms. Wischerath forwarded an email response on January 5, 2024 declaring her intention "to proceed with his individual deposition on 1/12 at 10 am at our offices."

40. Upon this basis, Declarant concluded that Mr. Evans would not be examined as a representative of the PBA.

41. In an email directed to both Ms. Wischerath and her assistant, dated January 10, 2024, Declarant confirmed this understanding by stating that Mr. Evans would appear "as an individual and not as a representative of the PBA."

## II.  RESEARCH UNDERTAKEN REGARDING RULE 30(b)(6)

42. Having confirmed that, despite the parties' past treatment of the subpoena as calling for the production by the PBA of all records responsive to the listing of documents annexed to the subpoena as **Exhibit A**, Mr. Evans was to be questioned as an individual, Declarant initiated steps to research the difference between a Rule 30(b)(6) deposition and a subpoena directed to the President of an entity, in this case the PBA, in that person's individual capacity.

43. A decision instructive on this issue was identified; that is: *United States v. J.M. Taylor*, 166 F.R.D. 356 (N.D.N.C. 1996). A copy of this decision is annexed as **Exhibit F**.

44. The fact that, in this instance, a subpoena rather than a notice was used to take deposition testimony was not viewed as determinative due to the fact the PBA and Mr. Evans are not parties to the pending litigation.

45. Of particular relevance in the *Taylor* decision is the following statement: "The Rule 30(b)(6) designee does not give his personal opinions. Rather, he represents the corporation's 'position' on the topic. [Citations.] Moreover, the designee must not only testify about facts within the corporation's knowledge, <u>but also its subjective beliefs and opinions</u>. [Citations]. The designee, in essence, represents the corporation just as an individual represents him or herself at a deposition." 166 F.R.D. at 361 (underlining added for emphasis).

46. Upon the basis of this statement, Declarant concluded that, when testifying in his "individual capacity," Mr. Evans would not be competent to provide testimony with respect to the "subjective beliefs and opinions" of the PBA.

47. It was upon the basis of this reasoning that Declarant caused an index card to be prepared for use at the Evans deposition in the event counsel for Plaintiff insisted on extracting testimony from him regarding the opinions or beliefs of the Union.

48. The first chosen language for this index card was as follows: "I have no personal knowledge regarding this subject."

49. Upon further reflection, Declarant opted to change the language to that which appeared on the index card used at the Evans deposition: "I do not have authority in my individual capacity to respond to your question." A copy of this index card is annexed to Plaintiff's motion papers as **Exhibit B**.

8

## III.  THE JANUARY 12, 2024 DEPOSITION OF JOHN EVANS

50. A transcript of the Evans examination is annexed to Plaintiff's motion papers as **Exhibit C**.

51. At page 34 of the transcript, lines 10-12, while questioning Mr. Evans, Ms. Wischerath referred to "a couple of things in the last couple of years that you've been advocating for on behalf of the PBA from the City."

52. Later on that same page of the transcript, at line 19, she clarified that she was referring to "cars, supervision and training."

53. Then, on page 35 of the transcript, lines 2-3, the witness was asked the following question: "What is it about the vehicles <u>that you feel</u> is not great right now for PBA members?" (Underlining added for emphasis.)

54. Declarant interpreted this inquiry, calling for the belief or opinion of the witness in his capacity as President of the Union, as an inquiry more properly suited for a Rule 30(b)(6) witness.

55. After several additional questions by Ms. Wischerath on this subject, Declarant attempted to articulate this concern on the record, beginning at line 17 on page 35 and continuing onto page 36 at line 14 of the transcript.

56. This explanation drew a distinction between Mr. Evans testifying in an official capacity as a Rule 30(b)(6) witness, as compared to in his individual capacity. Ms. Wischerath was informed that the question directed to "what his aims are" (page 36, line 8) on behalf of the PBA crossed this line. Declarant stated that Mr. Evans would be instructed not to answer questions considered to be directed to his official capacity as Union President.

57.     The transcript reflects that Ms. Wischerath did not respond to this comment, and instead, at page 36, lines 20-22, once more inquired with respect to what "<u>you feel</u> could be improved or is lacking as far as training for the PBA members?" (Underlining added for emphasis.)

58.     At the bottom of page 36 and continuing through line 7 on page 37 of the transcript, Declarant again reiterated a concern that a question of this character went "beyond the scope of a subpoena that's directed to him in his individual capacity." (Transcript at page 37, lines 3-4.) Declarant suggested a discussion off the record to address this concern.

59.     Ms. Wischerath again did not respond to this statement, rather offering at page 37, lines 9-10, to have the previous question regarding Mr. Evans' "feelings" be repeated.

60.     She then inquired, at page 37, lines 18-19, of the transcript about Mr. Evans' "secondary concerns, what are those about training?"

61.     When she next asked, at page 38, lines 9-13, of the transcript, about Mr. Evans' aspirations with respect to firearms training, the witness was provided with the index card containing the statement "I do not have authority in my individual capacity to respond to your question," and read that statement as his response. Transcript at page 38, lines 19-20.

62.     Confirming on the record that this index card had been given to the witness, Declarant once again explained that Mr. Evans would be permitted to answer questions dealing with his recollection of union matters, but that questions with respect to "what his goals are as president" would call for testimony in his official, as opposed to individual, capacity. Transcript, page 39, line 10.

63.     Declarant agreed that the index card provided to the witness could be marked as an exhibit.

64. Continuing on page 40 of the transcript, lines 1-6, Declarant apologized for having to take this step, referring to prior efforts to solve the issue, as outlined above.

65. Declarant emphasized at page 40, lines 11-17, of the transcript that, had Ms. Wischerath agreed Mr. Evans was being subpoenaed in his official capacity as President of the union, and had Ms. Wischerath then identified "what subjects you were going to cover," the issue presented could have been avoided.

66. The transcript, at page 42, line 8, reflects that a break in the deposition was then taken.

67. When Ms. Wischerath referred to motion practice, Declarant suggested contacting the Court, but Ms. Wischerath declined, expressing the view that "it's important for him to have the transcript." Transcript at page 42, lines 13-17.

68. Ms. Wischerath then left the deposition room to consult with her partner. When she returned, she made available for review by Declarant the Court's <u>Guidelines for Discovery Depositions</u>. Transcript at page 43, lines 19-23.

69. At pages 44-45 of the transcript, Declarant once more explained the history of pre-deposition discussions with counsel for Plaintiff, as well as the rationale for concluding that Mr. Evans should not be called upon to respond to deposition questions directed to his official capacity as Union President.

70. At page 46 of the transcript, lines 1-11, Declarant observed that, during the off-the-record break, upon reviewing the Court's Guidelines, Declarant had identified a means of going forward with the deposition; however, when Declarant requested "an opportunity to review these guidelines with Mr. Evans so that he can listen to what my recommendations are and he can make

11

a decision on how he wants to handle this issue[,]" Mr. Wischerath flatly refused to permit this conversation to take place.

71.   Declarant then explained that "absent the opportunity to consult with my client before we proceed, if, on that basis, Ms. Wischerath insists on stopping the deposition now and filing a motion, we're prepared to respond." Transcript, at page 46, lines 11-15.

72.   Declarant then reiterated the fact that Ms. Wischerath refused to allow Declarant to confer with Mr. Evans "regarding those guidelines, and what my recommendation was on how to proceed," and that absent being given that opportunity, motion practice would be required. Transcript, page 47, lines 2-3.

73.   Ms. Wischerath stated that her refusal to permit Declarant to discuss this proposed procedure with Mr. Evans was based upon her interpretation that the Court's Guidelines forbid any conferences between attorney and client. Transcript, at page 47, lines 8-12.

74.   Before the parties left the deposition room, Ms. Wischerath suddenly remarked "You know what, I'd like to mark this[,]" referring to the second index card, not used nor marked during the deposition, that had been brought by Declarant to the deposition. Transcript, at page 49, lines 2-3.

75.   As she made this comment, Ms. Wischerath reached across the table where Declarant's file materials were located and took possession, over objection, of this index card. She was specifically informed: "Please give it back to me. You don't have permission to mark it. You don't have permission to take my material." Transcript, at page 49, lines 10-12.

76.   Based upon later remarks by Ms. Wischerath, it is apparent she did not realize that this conduct had been memorialized on the record.

77. In particular, in thereafter describing what had taken place, she mischaracterized Declarant's objection as follows: "Mr. Personius refused to allow it to be marked, and made a statement to the effect that, in all of his years of practicing, he's never encountered someone trying to mark as an exhibit a notecard that was brought to a deposition to instruct a witness how to answer." Transcript, at page 50, lines 7-12.

78. In fact, as set forth above, this statement was completely inaccurate and does not fairly set forth the basis for Declarant's objection.

79. In response to Ms. Wischerath's misstatement of what had taken place, Declarant first read the content of the second index card into the record as follows: "I have no personal knowledge regarding this subject." Transcript, at page 51, lines 8-11.

80. Continuing, Declarant explained that the objection to marking the index card had been based upon the fact it had not been used during the deposition, "but what I specifically objected to wasn't the marking of the card, it was the fact that Ms. Wiscerath reached over into the area where all my personal papers are related to this deposition, and grabbed the card without my permission, and over my objection, to insist that it be marked." Transcript, at page 51, lines 17-23.

81. At this point, the deposition formally ended.

82. As set forth above, following a review of the Court's Guidelines, Declarant had announced to Ms. Wischerath that a means of moving forward with the examination had been identified by Declarant, which needed to be first presented to and approved by the client (John Evans). The record shows that Ms. Wischerath would not agree to this protocol.

83. After reading the Guidelines, and being fully refreshed as to their content, Declarant had focused upon ¶¶ 2 and 10 regarding the handling of objections. In particular, the following statement in ¶10 of the Guidelines was found to be noteworthy: "Examining counsel shall not

13

engage in any argument with opposing counsel as to these issues, rather his objection shall be taken on the record and appropriate relief from the court may be sought upon completion of the examination." The rule continues by stating that counsel for the witness needs to follow the same procedure.

84. Upon the basis of this statement in ¶10, Declarant intended to inform Mr. Evans that the examination could go forward, provided Ms. Wischerath was in agreement, by noting on the record an objection to any question posed by Ms. Wischerath with the understanding the objection would preserve for later determination by the Court the issue outlined above regarding the capacity in which testimony was being taken from Mr. Evans.

85. In fact, following the examination, this proposal was discussed with Mr. Evans, who agreed that it would have been an appropriate method for continuing the examination.

86. On the same date as the deposition, January 12, 2024, at 4:30 pm, Declarant sent an email to Ms. Wischerath setting forth this fact; that is, "that I would object to your questions that I viewed as being improperly directed to Mr. Evans in his official capacity, he would still respond, and we would then be given the opportunity to later address the admissibility of that testimony with the Court. Mr. Evans is agreeable to that approach." A copy of this email is annexed as **Exhibit G**.

87. As the docket reflects (**Exhibit H**), counsel did not file her motion until almost two hours later at 6:21 pm, meaning she knew of this fact well before the filing.

## CONCLUSION

88. Based upon the detailed and factually supported chronology set forth above, Declarant did not engage in obstructionist conduct nor coaching of Mr. Evans at his January 12, 2024 examination.

14

89. To the contrary, a good faith procedural issue was posed by Declarant, after efforts to resolve it beforehand had not been successful.

90. Upon Ms. Wischerath's confirmation that Mr. Evans was not being called in his capacity as President of the PBA, but rather in his individual capacity, Declarant concluded there was no need to present a pre-deposition motion to the Court regarding counsel's refusal to provide the equivalent of a Rule 30(b)(6) notice.

91. In fact, the disagreement between counsel reflected in the deposition transcript notwithstanding, had Ms. Wischerath permitted Declarant to briefly consult with Mr. Evans after having reviewed the Court's Guidelines for Discovery Depositions, the examination could in fact have continued on January 12, 2024.

92. In proposing this approach, Declarant was acting wholly consistent with Rule 32 of the District's Civility Principles and Guidelines, which provides as follows: "We will accept primary responsibility after consultation with the client, for making decisions about procedural agreements. We will explain to our clients that cooperation among counsel in such matters is the professional norm and may be in the clients' interest. We will explain the nature of the matter at issue in any such proposed agreement and explain how such agreements do not compromise the clients' interests." (Underlining added for emphasis.)

93. Unfortunately, but for Ms. Wischerath's misinterpretation of the Court's Guidelines, which assuredly are not intended to contravene Civility Rule 32, there would have been no need to file the motion now pending before the Court.

94. For all of these reasons, Declarant respectfully requests that the request for sanctions be denied, and the parties be directed to set a new date for completion of the deposition of John Evans.

Dated: Buffalo, New York
January 26, 2024.

/s/ **Rodney O. Personius**
Rodney O. Personius, Esq.
PERSONIUS MELBER LLP
*Attorneys for John Evans*
2100 Main Place Tower
350 Main Street
Buffalo, NY  14202
(716)  855-1050
rop@personiusmelber.com