UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARTIN GUGINO,                                          **DECISION**
                                                           **and**
                         Plaintiff,                     **ORDER**

             v.                                    **21-CV-283-LJV-LGF**

CITY OF BUFFALO,
MAYOR BYRON BROWN,
ROBERT McCABE,
AARON TORGALSKI,
JOHN LOSI,
BYRON C. LOCKWOOD,
DEPUTY POLICE COMMISSIONER
  JOSEPH GRAMAGLIA,

                         Defendants.
_____


APPEARANCES:           LIPSITZ GREEN SCIME CAMBRIA LLP
                       Attorneys for Plaintiff
                       RICHARD P. WEISBECK, JR.,
                       MELISSA D. WISCHERATH, and
                       ROBERT MacWILLIAMS CORP, of Counsel
                       42 Delaware Avenue, Suite 120
                       Buffalo, New York  14202

                       HODGSON RUSS LLP
                       Attorneys for Defendants
                       KARALYN ROSSI,
                       HUGH M. RUSS,
                       PETER A. SAHASRABUDHE, of Counsel
                       The Guaranty Building
                       140 Pearl Street, Suite 100
                       Buffalo, New York 14202

                       RICHARD G. COLLINS, ESQ.
                       Attorney for non-party witness Jeffrey M. Selchick, Esq.
                       4185 Seneca Street, Suite 7
                       West Seneca, New York  14224

## JURISDICTION

This action was referred to the undersigned by Hon. Lawrence J. Vilardo on March 22, 2021 (Dkt. 6), for non-dispositive pretrial motions.  The matter is presently before the court on Defendants' motion filed December 7, 2023, for a protective order (Dkt. 79), Plaintiff's motion filed December 18, 2023, to compel a further deposition (Dkt. 81), nonparty Jeffrey M. Selchick's motion filed December 21, 2023, to quash his deposition subpoena (Dkt. 82), Plaintiff's motions filed January 12, 2024 for sanctions and to compel discovery by non-party John Evans (Dkt. 92), and for expedited relief regarding such motion (Dkt. 93), and Plaintiff's cross-motion filed January 17, 2024, to compel non-party Jeffrey M. Selchick's deposition (Dkt. 98).

## BACKGROUND and FACTS[1]

In this civil rights action commenced on February 22, 2021, Plaintiff Martin Gugino ("Plaintiff" or "Gugino"), alleges Defendants, including the City of Buffalo ("the City"), Mayor Byron Brown ("Mayor Brown"), Buffalo Police Department ("Buffalo Police") Officers Robert McCabe ("McCabe"), Aaron Torgalski ("Torgalski"), and John Losi ("Losi") (together, "Defendant Police Officers"), Buffalo Police Commissioner Byron C. Lockwood ("Lockwood"), and then Deputy Buffalo Police Commissioner Joseph Gramaglia ("Gramaglia") (together, "Defendants"), violated Plaintiff's constitutional rights to freedom of speech, peaceful assembly, petition the government for redress of grievances, and "movement," and freedom from unreasonable seizures and unlawful use of force by governmental agents, and due process of law.  Complaint ¶ 1.  Plaintiff

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

asserts ten claims for relief including violations of his constitutional rights pursuant to 42 U.S.C. § 1983, as well as violations of New York common law.  Plaintiff's claims pertain to an incident occurring in the evening of June 4, 2020, in front of Buffalo City Hall, where Plaintiff was participating in a protest against perceived racially unjust law enforcement policies ("the protest").  At that time, the City had enacted an 8:00 P.M. curfew ("the curfew").  As the curfew approached, the Defendant Police Officers allegedly used unnecessary force in physically assaulting Plaintiff putatively because Plaintiff's continued presence a few minutes after 8:00 P.M. was in violation of the curfew ("the incident").  It is undisputed that Plaintiff sustained a fractured skull during the incident.

On November 1, 2 and 3, 2021, one Jeffrey M. Selchick, Esq. ("Selchick"), presided over an arbitration hearing involving disciplinary proceedings brought by the City and the Buffalo Police against McCabe and Torgalski regarding the incident.  On April 8, 2022, Selchick issued an Opinion and Award ("arbitration decision") resolving the disciplinary charges against McCabe and Torgalski.  Although the arbitration decision, on which Selchick has never publicly commented, was released only to the parties to the disciplinary proceedings, the full contents of the arbitration decision were included in an April 8, 2022 article published in the Buffalo News.

On December 7, 2023, Defendants filed a motion for a protective order (Dkt. 79) ("Defendants' Motion for a Protective Order"), seeking a court order declaring Plaintiff's deposition of Gramaglia is complete.  The motion is supported by the attached Declaration [of Peter A. Sahasrabudhe, Esq.][2] in Support of Defendants' Motion for

---

[2] Unless otherwise indicated, bracketed material has been added.

Protective Order (Dkt. 79-1) ("First Sahasrabudhe Declaration"), with exhibits A through E (Dkts. 79-2 through 79-6) ("Defendants' Exh(s). ___"), and the Memorandum of Law in Support of Motion for Protective Order (Dkt. 79-7) ("Defendants' Memorandum").  On December 18, 2023, Plaintiff filed the cross-motion to compel the continued deposition of Gramaglia (Dkt. 81) ("Plaintiff's Cross-Motion to Compel"), attaching Plaintiff's Memorandum of Law on Deposition Obstruction by Defendant Gramaglia (Dkt. 81-1) ("Plaintiff's Cross-Motion Memorandum"), the Declaration of Richard P. Weisbeck, Jr., Esq. (Dkt. 81-2) ("First Weisbeck Declaration"), and the Declaration of Melissa D. Wischerath, Esq. (Dkt. 81-3) ("First Wischerath Declaration"), attaching exhibits A through C (Dkts. 81-4 through 81-6) ("Plaintiff's First Exh(s). ___").

On December 21, 2023, non-party arbitrator Selchick filed a motion to quash a subpoena served by Plaintiff for Selchick's deposition ("Motion to Quash") (Dkt. 82), supported by the Declaration [of Richard G. Collins, Esq.] in Support of Motion to Quash Plaintiff's Subpoena to Testify at a Deposition in a Civil Action Served on Arbitrator Jeffrey M. Selchick (Dkt. 82) ("First Collins Declaration"), attaching exhibits A through E (Dkts. 82-1 through 82-5) ("Collins's Exh(s). __"), the Declaration [of Selchick] in Support of Motion to Quash Plaintiff's Subpoena to Testify at a Deposition in a Civil Action Served on Arbitrator Jeffrey M. Selchick (Dkt. 82-6) ("Selchick Declaration"), attaching exhibits A and B (Dkts. 82-7 and 82-8) ("Selchick Declaration Exh(s). __"), and the Memorandum of Law in Support of Motion to Quash Plaintiff's Subpoena to Testify at a Deposition in a Civil Action Served on Arbitrator Jeffrey M. Selchick (Dkt. 82-9) ("Selchick's Memorandum").

On January 10, 2024, Defendants filed the Reply Memorandum of Law in Further Support of Motion for Protective Order and in Opposition to Plaintiff's Motion to Compel (Dkt. 91) ("Defendant's Response and Reply"), attaching the Reply Declaration [of Peter A. Sahasrabudhe, Esq.] in Further Support of Defendants' Motion for a Protective Order and in Opposition to Plaintiff's Motion to Compel (Dkt. 91-1) ("Sahasrabudhe Reply Declaration"), with exhibits A and B (Dkts. 91-2 and 92-3) ("Sahasrabudhe Reply Exh(s). __").

On January 12, 2024, Plaintiff filed a motion to compel non-party witness John Evans ("Evans") to answer all questions posed to him at his deposition by Plaintiff, and ordering Evans's attorney, Rodney Personius ("Personius") to refrain from speaking objections and deposition obstruction, as well as sanctions (Dkt. 92) ("Plaintiff's Motion to Compel").  Plaintiff's Motion to Compel is supported by the attached Memorandum of Law in Support of Motion to Compel (Dkt. 92-1) ("Plaintiff's Memorandum – Motion to Compel"), and the Declaration of Melissa D. Wischerath, Esq. (Dkt. 92-2) ("Second Wischerath Declaration"), with exhibits B[3] through E (Dkts. 92-3 through 92-6) ("Plaintiff's Second Exh(s). __").  Plaintiff also filed on January 12, 2024, a motion seeking expedited relief on Plaintiff's Second Motion to Compel, pursuant to Local Rules of Civil Procedure – W.D.N.Y. Rule 7(d) (Dkt. 93) ("Plaintiff's Motion to Expedite"), attaching the Memorandum of Law in Support of Expedited Relief of Motion to Compel Pursuant to L.R.Civ.P. 7(d) (Dkt. 93-1) ("Plaintiff's Memorandum Supporting Motion to Expedite"), and the Declaration [of Melissa D. Wischerath, Esq.] in Support of Motion to Expedite (Dkt. 93-3) ("Third Wischerath Declaration").

---

[3] No exhibit denominated as "A" is filed in support of Plaintiff's Motion to Compel.

On January 17, 2024, Plaintiff filed a cross-motion to compel Selchick's deposition and production of documents (Dkt. 98) ("Plaintiff's Second Cross-Motion to Compel"), attaching the Declaration of Melissa D. Wischerath, Esq. (Dkt. 98-1) ("Fourth Wischerath Declaration"), Plaintiff's Memorandum of Law (Dkt. 98-2) ("Plaintiff's ~~Second~~ Memorandum – Second Cross-Motion"), and exhibits A through C (Dkt(s). 98-3 through 98-5) ("Plaintiff's Third Exh(s). __").  On January 22, 2024, Selchick filed the Reply Memorandum of Law in Support of Motion to Quash Plaintiff's Subpoena to Testify at a Deposition in a Civil Action Served on Arbitrator Jeffrey M. Selchick and in Opposition to Cross-Motion to Compel (Dkt. 99) ("Selchick Reply"), attaching exhibit A (Dkt. 99-1) ("Selchick's Exh. A"), the Second Declaration of Arbitrator Selchick in Support of Motion to Quash and in Opposition to Cross-Motion to Compel (Dkt. 99-2) ("Second Selchick Declaration"), with exhibit A (Dkt. 99-3) ("Police Discipline Triage Agreement").

On January 24, 2024, Plaintiff filed the Reply Memorandum of Law by Plaintiff in Further Support of His Cross-Motion and in Opposition to Defendant Gramaglia's Motion for a Protective Order (Dkt. 100) ("Plaintiff's Reply and Sur-Reply"), attaching the Declaration of Richard P. Weisbeck, Jr., Esq. (Dkt. 100-1) ("Second Weisbeck Declaration"), with exhibits (Dkts. 100-2 through 100-7) ("Second Weisbeck Declaration Exh(s). __").

On January 26, 2024, non-party Evans filed the Response Declaration of Counsel [Rodney Personius, Esq.] (Non-Party Witness J. Evans) (Dkt. 101) ("Personius Response Declaration"), attaching a volume of exhibits A through H (Dkt. 101-1) ("Personius Response Exh(s). __"), and Non-Party Witness J. Evans' Memorandum of Law (Dkt. 102) ("Evans's Response").  On January 31, 2024, Plaintiff filed the Reply

Memorandum of Law by Plaintiff in Further Support of His Motion Against the Non-Party Witness and His Attorney (Dkt. 103) ("Plaintiff's Reply – Motion to Compel").  On February 2, 2024, Evans filed the Surreply Declaration of Counsel [Rodney Personius, Esq.] (Non-Party Witness J. Evans) (Dkt. 104) ("Personius Sur-Reply Declaration").

In a letter dated March 22, 2024, Wischerath provided the court with an additional page of a "Triage Agreement" originally filed as Dkt. 99-3 ("Police Discipline Triage Agreement").  *See* Wischerath Letter (Dkt. 108), attaching *inter alia*, the missing page (Dkt. 108-2) ("Additional Triage Agreement Page").  On March 25, 2024, Selchick filed the Declaration of Richard G. Collins, Esq. in Response to Plaintiff's Letter Motion (Dkt. 109) ("Second Collins Declaration"), clarifying that the document attached to the Wischerath Letter consists solely of an additional page of the Police Discipline Triage Agreement that was missing from what was originally provided to Plaintiff.

Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion for Protective Order is DENIED; Plaintiff's Cross-Motion to Compel is GRANTED in part and DENIED in part; Selchick's Motion to Quash is GRANTED; Plaintiff's Second Cross-Motion to Compel is DENIED; Plaintiff's Motion to Compel is GRANTED; and Plaintiff's Motion to Expedite is DISMISSED as moot.

## **DISCUSSION**

### 1.   **Defendants' Motion for Protective Order and Plaintiff's Cross-Motion to Compel**

Defendants' Motion and Plaintiff's Cross-Motion to Compel pertain to Plaintiff's deposition of Defendant Joseph Gramaglia, Commissioner of the Buffalo Police

Department ("Gramaglia").[4]  As relevant, on October 17, 2023, Gramaglia appeared for

a deposition conducted by Plaintiff's counsel Richard P. Weisbeck, Jr., Esq.

("Weisbeck"), and defended by defense counsel Hugh M. Russ III, Esq. ("Russ") ("first

deposition session").[5]  During the first deposition session, Weisbeck requested that

Gramaglia provide "yes or no" answers to some of the questions posed, but Gramaglia's

answers were often in narrative form.  The first deposition session commenced at 10:05

A.M., Gramaglia's First Dep. Tr. at 1, and concluded at 4:24 P.M., when Gramaglia

explained he was unsure of how the word "retaliate" was defined as used in a question

posed by Weisbeck because Gramaglia was unaware that any member of the Buffalo

Police retaliated against a member of the media such that Gramaglia was unable to

answer the question.  *Id*. at 254-56.  Rather than clarifying the question, Weisbeck

unilaterally decided the deposition was "adjourn[ed] for the day."  *Id*. at 256.  Weisbeck

expressed his intention to further depose Gramaglia prompting Russ to reserve the right

to object to any further deposition of Gramaglia.  *Id*. at 258-59.

On November 9, 2023, Gramaglia appeared for the second deposition session

conducted by Weisbeck, and defended by defense counsel Peter A. Sahasrabudhe,

Esq, ("Sahasrabudhe") ("second deposition session").[6]  The second deposition session

commenced at 10:04 A.M., Gramaglia's Second Dep. Tr. at 262, and ended at 10:49

A.M., when Weisbeck suspended the deposition, stating he would obtain a court order

---

[4] Although at the time of the incident Gramaglia was Deputy Commissioner of the Buffalo Police Department, in March 2022, Gramaglia was promoted to Commissioner of the Buffalo Police Department. Dkt. 79-3 at 18.

[5] A copy of the transcript of the first deposition session is filed as Defendants' Exh. B (Dkt. 79-3). References "Gramaglia's First Dep. Tr." are to the pages of this transcript.

[6] A copy of the transcript of the second deposition session is filed as Defendants' Exh. D (Dkt. 79-5). References to "Gramaglia's Second Dep. Tr." are to the pages of this transcript.

directing Gramaglia to answer "yes or no" to "straight-forward questions. . . ."  *Id*., at

306.  When Russ responded that Gramaglia answered each of Weisbeck's questions,

Weisbeck stated, "No, he hasn't.  I ask yes or no questions, and he still keeps going on.

We're going to get a court order."  *Id*.

      Defendants then filed the instant motion seeking a court order protecting

Gramaglia from being required to appear for a further deposition arguing further

deposition is inappropriate based on Gramaglia's status as a high-ranking government

official and the fact that both the first and second deposition sessions, at which

Gramaglia testified for more than five hours, were unilaterally suspended by Weisbeck,

Defendants' Memorandum at 3-5, and that Weisbeck's suspension of the second

deposition session was in blatant disregard of the undersigned's deposition rules.  *Id*. at

5.  Defendants further request the court award them costs and fees incurred in

connection with the motion.  *Id*. at 6-7.

      In his cross-motion to compel, Plaintiff references multiple portions of the

transcripts which Plaintiff maintains demonstrates Gramaglia's obstructionist behavior in

answering various deposition questions, particularly providing answers in narrative form

rather than a simple yes or no, Plaintiff's Cross-Motion Memorandum at 4-21, and

requests the court issue an order compelling Gramaglia to reappear for further

deposition and answer direct leading questions "yes" or "no" in accordance with

Fed.R.Evid. 611, in light of Gramaglia being a party and thus, by definition, an adverse

witness.  *Id*. at 21.  Plaintiff further argues that pursuant to Fed.R.Civ.P. 30(d)(1), an

extension of the seven-hour limit for depositions is warranted by Gramglia's "evasive

and non-responsive answers."  *Id*. at 21-22.  In opposition to Defendants' Motion,

Plaintiff argues Defendants have failed to demonstrate the requisite good cause for the requested protective order. *Id*. at 22-23. In further support of a protective order, Defendants argue that Plaintiff fails to address Defendants' argument that, according to legal precedent high-ranking officials like Gramaglia should not be required to repeatedly be deposed establishes the requisite good cause for a protective order, Defendants' Response and Reply at 5-6, and Plaintiff's reference to Defendants' failure to follow the undersigned's deposition rules refers not to Gramaglia's deposition, but to an instance in a prior deposition where Defendants' counsel instructed another deponent not to answer a question. *Id*. at 6. In opposition to Plaintiff's Cross-Motion to Compel, Defendants argue Plaintiff failed to establish that Gramaglia was evasive or obstructionist during either of the two deposition sessions so as to support Weisbeck suspending both deposition sessions. *Id*. at 2-5. In further support of Plaintiff's Cross-Motion to Compel, Plaintiff characterizes Defendants' response as "personal attacks on plaintiff's counsel" to avoid being held responsible for Defendants' "misconduct and long-standing practice of failing to discipline officers who engage in police brutality," Plaintiff's Reply and Sur-Reply at 3-6, asserting the court should exercise its "wide authority and discretion to control discovery" by permitting a further deposition of Gramaglia. *Id*. at 7-14. In further opposition to Defendants' Motion, Plaintiff argues there is no merit to Gramaglia's argument that as a high-ranking official, he is entitled to a protective order barring Gramaglia from further deposition practice. *Id*. at 14-15.

### A.   High-Ranking Official

The court first considers Defendants' argument, Defendant's Memorandum at 3-5, that Gramaglia, as Deputy Police Commissioner, is a high-ranking official who

ordinarily is protected from being deposed, which Defendants maintain establishes the requisite good cause for a protective order.  Defendants' Response and Reply at 5-6. Plaintiff maintains Defendants, by failing to assert Gramaglia's status as a high-ranking official prior to the first deposition session, has rendered the argument "moot," Plaintiff's Reply and Sur-Reply at 15, and that even if such argument is not moot, it is nevertheless without merit because Gramaglia's answers given during the first and second deposition sessions establish Gramaglia "has unique first-hand knowledge related to the litigated claims or [ ] the necessary information cannot be obtained through other, less burdensome, or intrusive means."  *Id*.

"Depositions of high-ranking government officials are generally not permitted except upon proof that '(1) the deposition is necessary in order to obtain relevant information that cannot be obtained from any other source and (2) the deposition would not significantly interfere with the ability of the official to perform his governmental duties.'"  *Murray v. County of Suffolk,* 212 F.R.D. 108, 109 (E.D.N.Y.2002) (quoting *Marisol A. v. Giuliani,* 1998 WL 132810, at *2 (S.D.N.Y. May 23, 1998)).  "High-ranking government officials are generally shielded from depositions because they have 'greater duties and time constraints than other witnesses.'"  *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (quoting *In re United States (Kessler),* 985 F.2d 510, 512 (11th Cir.1993)).  If courts did not limit these depositions, such officials would spend "an inordinate amount of time tending to pending litigation." *Bogan v. City of Boston,* 489 F.3d 417, 423 (1st Cir.2007).  "To depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the

litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means."  *Id*. (citing *Bogan,* 489 F.3d at 423).

Defendants concede that Plaintiff "had a right to take the testimony of Commissioner Gramaglia, as he was personally involved in the operations plan for the police's response to protests in the City of Buffalo on the date of the incident giving rise to the plaintiff's claims."  Defendants' Memorandum at 4 (citing *Gibson v. Carmody*, 1991 WL 161087, at *1 (S.D.N.Y. Aug. 1991) (permitting deposition of New York Police Commissioner who personally participated in the incident or investigation on the incident and subsequent disciplinary proceedings).  Nor do Defendants maintain the information Plaintiff seeks could be obtained through means less burdensome or intrusive than deposing Gramaglia.  The court thus focuses on whether permitting Plaintiff to further depose Gramaglia would significantly interfere with Gramaglia's performance of his official duties as Police Commissioner.

At the time of the incident, Gramaglia was Deputy Police Commissioner of Operations, but in 2022, was promoted to Police Commissioner, Gramaglia First Dep. Tr. at 18, the position Gramaglia held as of the first and second deposition sessions. Regarding Plaintiff's assertion that Defendants have not met their burden to establish good cause for a protective order, Plaintiff's Cross-Motion Memorandum at 22-23, Defendants argue that Gramaglia, as Police Commissioner, is a high-ranking government official which status alone provides the requisite good cause for the requested protective order.  Defendant's Response and Reply at 5.  Defendants' argument is at best disingenuous given that Defendants produced Gramaglia for deposition on October 17, 2023, and again on November 9, 2023, well after his

promotion to police commissioner.  Not only does the fact that Gramaglia has already appeared for two deposition sessions without Plaintiff having to obtain a court order directing Gramaglia's appearance despite Gramaglia's position as Police Commissioner undermine Defendants' argument that further deposition of Gramaglia would significantly interfere with Gramaglia's performance of his governmental duties, but Defendants have conceded that Gramaglia was personally involved in the Buffalo Police's operations plan in response to protests in Buffalo on the date of the incident giving rise to the plaintiff's claims without suggesting a less burdensome or intrusive means of obtaining the information Plaintiff seeks.  Nor does Gramaglia point to any facts supporting his bald assertion that further deposition of Gramaglia would interfere with Gramaglia's performance of his duties as a high-ranking government official so as to establish the requisite good cause for a protective order shielding Gramaglia from further deposition practice.  Accordingly, Defendants should not be allowed to now rely on Gramaglia's position as Police Commissioner to establish the requisite good cause for a protective order.

Defendants' Motion for a protective order should therefore be DENIED on this ground.

### B. Sufficiency of Gramaglia's Answers and Further Deposition Practice

In opposition to Defendants' argument that because Gramaglia has already participated in two deposition sessions which Weisbeck unilaterally suspended and should not be required to submit to further deposition, Defendants' Memorandum at 5-6, Plaintiff, in support of Plaintiff's Cross-Motion to compel, references several excerpts of the transcripts of the first and second deposition sessions which Plaintiff maintains

demonstrate Gramaglia repeatedly "evaded answering simple questions and "yes" or "no" questions," Plaintiff's Cross-Motion Memorandum at 4-21, including "the foundation question, i.e., does this comply with the police department's policy." *Id*. at 21.  Plaintiff argues that Gramaglia's "evasive and non-responsive answers" warrant a court order extending Gramaglia's deposition, *id*. at 21-22, and that Weisbeck, rather than suspending Gramaglia's deposition, merely "paused" the deposition.  *Id*. at 22-23.  In further support of a protective order and in opposition to Plaintiff's motion to compel further deposition of Gramaglia, Defendants maintain the excerpts of Gramaglia's deposition referenced by Plaintiff "do not amount to obstructing a deposition or being evasive," but "are ordinary occurrences at depositions," Defendants' Response and Reply at 1, that Gramaglia, rather than being obstructive and evasive, provided complete answers to each of the questions posed by Weisbeck, *id*. at 2-5, and that Weisbeck's unilateral suspension of Gramaglia's first and second deposition sessions were without justification.  *Id*. at 5-6.  In further support of his motion to compel and in opposition to Defendants' request for a protective order, Plaintiff argues that rather than holding its police officers responsible for engaging in police misconduct, Defendants resort to personal attacks against Weisbeck, Plaintiff's Reply and Sur-Reply at 3-6, urging the court to exercise its authority and discretion to control discovery including the deposition of Gramaglia who evaded answering direct questions "yes" or "no," *id*. at 7-14.

Preliminarily, the court addresses Defendants' references to excerpts of transcripts from other depositions to demonstrate that at every deposition conducted in connection with this action, Weisbeck is "combative and needlessly hostile."  First

Sahasrabudhe Declaration ¶ 4 (citing Defendants' Exh. A (excepts from depositions of Defendant Losi (Dkt. 79-2 at 2-20); Defendant McCabe (Dkt. 79-2 at 21-26), Defendant Torgalski (Dkt. 79-2 at 27-34), and one Michael Palizay (Dkt. 79-2 at 35-38)). Regardless of Weisbeck's conduct at other depositions, the matter before the court is Gramaglia's deposition.  Accordingly, the court does not concern itself with the other referenced depositions.

Relative to Plaintiff's insistence that Gramaglia should have limited his answers to deposition questions to "yes" or "no," Fed.R.Civ.P. 30(c)(1) provides that for depositions by oral examination, "[t]he examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence . . . ." Further, Fed.R.Evid. 611(c)(2) specifically permits leading questions to be asked of, *inter alia*, an adverse party.  Accordingly, in deposing Gramaglia who, as a defendant to this action, is an adverse party, Plaintiff is permitted to ask leading questions thereby requiring a yes or no response.  *See Shaffer v. Consolidated Rail Corp*., 1992 WL 73163, at *2 n. 2 (W.D.N.Y. Apr. 2, 1992) (noting that pursuant to Fed.R.Civ.P. 30(c), Fed.R.Evid. 611(c) (permitting interrogation by leading questions when a party calls a hostile witness or adverse party) applies to depositions).

Insofar as Defendants and Plaintiff dispute whether Weisbeck was justified in suspending or pausing Gramaglia's first and second deposition sessions, the court's review of the relevant deposition transcripts establishes Weisbeck's conduct with regard to Gramaglia's deposition was not flawless.  Specifically, a review of the transcripts of the first and second deposition sessions reveals Gramaglia answered numerous questions either "yes" or "no" or gave an equivalent one-word answer.  *See*, *e.g.*, First

Gramaglia Dep. Tr. at 42 (Weisbeck asking, "And part of that training is to instruct, teach, and imbue the officers to avoid the use of force whenever possible, true?" and Gramaglia responding, "Yes."); and at 249-52 (Weisbeck asking a series of nine questions to which Gramaglia essentially answered, "yes" or "true"; Second Gramaglia Dep. Tr. at 268 (Weisbeck asking, "DeLong was the supervisor who was being complained about in this e-mail, right?" to which Gramaglia responded, "Yes."); and at 282 (Weisbeck asking, "Throughout the black lives matters protest in May and June of 2020, you and other members of the command team of the Buffalo Police department were monitoring by video activities of protesters and demonstrators, true?" to which Gramaglia responded, "True.").  Gramaglia's answers to such questions thus do not support Plaintiff's Cross-Motion seeking to compel further deposition of Gramaglia.

Some of the questions Weisbeck posed to Gramaglia could not necessarily be answered with a simple yes or no answer.  For example, at the first deposition session, Weisbeck asked Gramaglia, "Do you agree that the unconsented physical intrusion when someone is being subject to the use of force, is a human rights violation?"  First Gramaglia Dep. Tr. at 30.  Gramaglia responded, "I don't agree with that statement.  It depends on the circumstances of what that use of force is, what necessitated that use of force."  *Id*. at 31.  Indeed, had Gramaglia simply responded, "yes," Gramaglia would have conceded that every unconsented use of force by law enforcement officers constitutes a human rights violation, essentially denying law enforcement the right to use force in any situation lest the officers be subject to liability for human rights violations, and potentially leaving others at the risk of physical harm from a physically unrestrained criminal.  Alternatively, a negative response by Gramaglia would have

depicted Gramaglia as being unconcerned that the use of physical force could never arise to a human rights violation, a very prejudicial position.  Similarly, with regard to another Buffalo police officer against whom disciplinary charges were brought alleging the officer physically interfered with a citizen's attempt to use her cell phone to record an instance of asserted police brutality, Weisbeck asked whether "the actions by [a former Buffalo police officer] were a violation of the department polices and procedures, true?"  *Id*. at 109.  Gramaglia responded that because the officer retired during the disciplinary proceedings, the matter was "never fully adjudicated" and therefore the officer was never found guilty of any alleged departmental policy violations, *id*., adding that when an officer retires while disciplinary proceedings against him are pending, the disciplinary charges are never pursued to resolution.  *Id*. at 110.  Under such circumstances, the question could not be accurately addressed by a simple "yes" or "no" answer.  Comparable questions were asked by Weisbeck at the second deposition session.  *See*, *e.g.*, Second Gramaglia Dep. Tr. at 287-88 (Weisbeck asking, "So why would they be denied - - citizens be denied the right to move about and protest against police brutality after eight p.m., yet the press was exempt from that curfew?" and Gramaglia answered, "It depends on the actions of the people, whether or not they are doing other actions that are outside of the scope of their First Amendment right to protest.").

Weisbeck also posed questions that invited narrative, rather than a one-word responses including, "And when you conduct that investigation, what do you do with the results of the investigation?"  First Gramaglia Dep. Tr. at 35.    After requesting some clarification, Gramaglia's response, as expected, consisted of more than one word.  *Id*.

at 36-37.  *See also* First Gramaglia Dep. Tr. at 63-65 (Weisbeck asking Gramaglia to provide a reason why the Buffalo Police advised against using members of the Buffalo Police Department in providing examples of incidents of police officers using force against citizens to teach the officers the proper manner in which to use force against civilians, and after Gramaglia provided a reason, asking Gramaglia, "Is there anything else?" thereby inviting Gramaglia to provide additional examples, a request with which Gramaglia complied, again, answering in narrative form); Second Gramaglia Dep. Tr. at 273 (Weisbeck asking, "What was the purpose of being on the ground in the crowd?" to which Gramaglia responded, "So that we can get firsthand information on whether there was going to be any actions towards illegal activity, any destruction of property, and so that we can know what's going on within the crowd.").

Further, several of Weisbeck's questions are not only compound, but can be fairly characterized as "argumentative."  *See*, *e.g.*, First Gramaglia Dep. Tr. at 77 ("So you obviously, from your life experiences, your academic experiences, have an understanding that certain police officers will use cover charges against citizens when they arrest them for a bad attitude, verbal abuse or other things where there's not a justification to arrest that person, and those are called cover charges, isn't that true?"); and Second Gramaglia Dep. Tr. at 286 (Weisbeck asking, "What is the reason that the Buffalo Police Department allowed members of the press to exercise their First Amendment rights during the curfew but denied other citizens the ability to exercise their First Amendment rights during the curfew?").

Significantly, between the commencement of the first deposition session at 10:05 A.M., and its conclusion at 4:24 P.M., there were only four questions to which Weisbeck

insisted Gramaglia answer "yes" or "no."  *See* First Gramaglia Dep. Tr. at 71-72 ("Is this training [regarding de-escalation techniques and practical applications] that you are mandating since 2021 going to be on an annual basis?"); 109-10 (Weisbeck asking Gramaglia whether actions by a certain Buffalo police officer accused of using vulgar language and interfering with a civilian's recording a police response to a man in distress "were a violation of the department policies and procedures, true?"); 128-29 ("Did anyone in the Buffalo Police Department define for its officers what essential pedestrian and vehicular traffic would be?"); and 196 ("I'm asking you actually, sir, just for you to answer yes or no.  Did you at the time you saw the video of Hassett taking that citizen and shoving him across the leg making him fall onto the floor, did you say to yourself in words or substance, that's improper conduct?").  Not only did Weisbeck instruct Gramaglia to limit his answers to "yes" or "no" only with regard to these four questions, but Weisbeck did not object to most of Gramaglia's responses given in narrative form.

The transcript of the second deposition session shows it proceeded in a fairly routine manner for about 45 minutes until the following exchange occurred pertaining to a video that was being shown to Gramaglia:

| | |
|---|---|
| Weibeck: | In fact, contrary to what you testified earlier, the black male with the white T-shirt was directing his verbal statements to the man in the black hat with the camouflage shirt, isn't that true? |
| Sahasrabudhe: | Form. |
| Gramaglia: | Yeah.  It's been three and a half years so I thought that there was some more directive of the language towards him, but apparently I was mistaken in that, from the video that I've seen so far. |

Second Gramaglia Dep. Tr. at 302.

Not satisfied with Gramaglia's answer, Weisbeck requested the court reporter read the

question back to Gramaglia and the deposition continued as follows:

| | |
|---|---|
| Weisbeck: | Can you say yes or no to that? |
| Gramaglia: | I answered the question. |
| Weisbeck: | No. I'm asking can you answer yes or no? |
| Sahasrabudhe: | Objection to form. |
| Weisbeck: | No, you didn't. |
| Gramaglia: | I did. |
| Weisbeck: | Sir, are you able to answer the question yes or no? |
| Gramaglia: | Apparently, not to your satisfaction. |
| Weisbeck: | This is a different question.  Are you able to answer that question yes or no? |
| Gramaglia: | I am able to answer the question. |
| Weisbeck: | Yes or no? |
| Gramaglia: | I answered the question. |
| Sahasrabudhe: | I think you got the answer you were looking for, Rick.  I mean, he said - - |
| Weisbeck: | Well, I'm sorry, no.  Please.  I don't.  And I'm entitled to ask him yes or no questions. |
| Sahasrabudhe: | And he is entitled to respond - - |
| Weisbeck: | I'm sorry.  Let me finish - - |
| Sahasrabudhe: | - - to the best of his ability. |
| Weisbeck: | Just like Hugh [Russ] interrupts me all the time, you seem to be doing that as well.  I'm going to stop this deposition. |
| Sahasrabudhe: | Rick. |
| Weisbeck: |  I'm going to ask the Court for an order to compel this witness to answer that question yes or no, unless you want to speak to him, because I'm entitled to simple yes or no answers. |
| Sahasrabudhe: | So -- |
| Weisbeck: | And if you want -- if you don't, if you don't want to speak to your witness, we're going to stop now, and I'm going to bring a motion. |
| Sahasrabudhe: | He is entitled to answer the question to the best of his ability, which he can. Can you answer that question yes or no? |
| Gramaglia: | It does not appear that he engaged in anything. |
| Sahasrabudhe: | There you go. |
| Weisbeck: | That's not the word -- that's not what I asked. |
| Sahasrabudhe: | So now you want him to say a specific word? |
| Weisbeck: | Yes or no. Yes or no, that's what I want. I'm entitled to that. |
| Sahasrabudhe: | No, you're not, but okay. Can you use the word yes or no to appease Mr. Weisbeck? |
| Gramaglia: | I don't know what conversations ensued between -- |
| Weisbeck: | That's not -- |

| Gramaglia: | -- the two persons. |
|---|---|
| Weisbeck: | All right. I'm going to end this deposition, we're going to get a court order. |
| Sahasrabudhe: | For him to say yes or no? |
| Weisbeck: | Yes. Not only to this question, but many other questions. I have put up with this for one full day, and now I'm into the second day, and I'm asking straight-forward questions about yes or no, and this witness is decided throughout the entire deposition that he's not going to answer yes or no to questions that call for a yes or no answer, so we're ending this, and we'll get a judge to decide whether he's compelled to answer these questions. |
| Sahasrabudhe: | He's answered every single question. |
| Weisbeck: | No, he hasn't. I ask yes or no questions, and he still keeps going on. We're going to get a court order. |
| Videographer: | Going off the record, time is ten-forty-nine. |

Second Gramaglia Dep. Tr. at 304-06

Although not answered with a single word response, Gramaglia clearly stated he agreed with Weisbeck's description of the video that "the black male with the white T-shirt" depicted in the video was making statements to "the man in the black hat with the camouflage shirt." Why Weisbeck waited until this question to insist on "yes" or "no" answers to questions is not clear to the court. Further, as Defendants counsel avers, First Sahasrabudhe Declaration ¶ 11, in deposing Gramaglia, Weisbeck's questions largely did not directly pertain to the incident involving Gugino but, rather, to Buffalo Police Department's general policies and practices as well as training, particularly with regard to encounters with civilians and crowds.

The court also observes that Defendants' attorneys, including Hugh Russ, Esq. at the First Deposition Session, and Peter Sahasrabudhe, Esq., at the Second Deposition Session, entered a "form" objection to almost every question Weisbeck asked, including more than 250 times during the first deposition session which lasted, with breaks, five hours and 18 minutes, and more than 50 times during the second

deposition session which lasted only 45 minutes.  Assuming such objections were appropriately made, *see cf. Galin v. Hamada*, 283 F.Supp.3d 189, 200 (S.D.N.Y. 2917) (characterizing counsel's conduct in defending deposition "'not entirely praiseworthy'" based on counsel's "'repeated and unwarranted objections as to form – unconnected to the Court's order with respect to the scope of discovery.'"), the two deposition transcripts aptly demonstrate Defendants were perfectly capable of making such objections so as to preserve for trial any challenges that Defendants might want to assert.[7]

Defendants further argue, Defendant's Memorandum at 5; Defendants' Response and Reply at 6, the instant motion practice could have been avoided had Weisbeck, rather than unilaterally suspending the depositions sessions, simply recorded objections on the record regarding any answers Weisbeck considered as not responsive to the posed question, as required by "this Court's rules."[8]  *Id*.  Although Plaintiff does not directly respond to this argument, Defendant does not reference, and the court's research has not revealed, any case law requiring denying Plaintiff's Cross-Motion to Compel based on a failure to comply with the undersigned's Guidelines for Discovery

---

[7] The court notes that even frequent objections as to "form" are not improper "[b]ecause counsel defending a deposition have an obligation to make timely and contemporaneous objections under Rule 32 . . . ."  *Edwards v. Wilkie*, 2019 WL 5957171, at *3 (S.D.N.Y. Nov. 13, 2019).  Further, "courts in the Second Circuit have declined to impose sanctions based solely on voluminous, unwarranted, and argumentative objections where opposing counsel was not prevented from completing the deposition."  *Edwards*, 2019 WL 5957171, at *3 (declining to issue sanctions where "objections, while numerous, were not inappropriate or unwarranted . . . [and t]he vast majority of the objections were not speaking objections and did not involve colloquy . . . .") (quotation and citation omitted).

[8] Although Defendants do not specify which of "this Court's rules" regarding depositions they maintain Weisbeck violated, the context of this argument strongly suggests Defendants are relying on the tenth of the undersigned's 14 Guidelines for Discovery Depositions (Dkt. 21 at 4-5) which provides, as relevant here, that "[e]xamining counsel shall not engage in any argument with opposing counsel as to these issues; rather, his objection shall be taken on the record and appropriate relief from this court may be sought upon completion of the examination."

Depositions ("Deposition Guidelines").[9]  Defendants' Motion is thus DENIED as to Weisbeck's suspension of the second deposition session rather than completing the deposition and then seeking guidance from the court.

### C.    Continued Deposition

Gramaglia has already submitted to six hours and five minutes of deposition questioning including five hours and 18 minutes for the first deposition session and 45 minutes for the second deposition session for a total of six hours and three minutes of deposition questioning.  Fed.R.Civ.P. 30(d)(1) provides that "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours.  The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes of delays the examination."  In the instant case, the record does not establish any of the factors necessary to extend the time of Gramaglia's deposition beyond the permitted seven hours.  Further, Weisbeck repeatedly stated he seeks to further depose Gramaglia so as to ask only "yes" or "no" questions as permitted by Fed.R.Evid. 611(c)(2) (permitting leading questions to be asked of, *inter alia*, an adverse party).  *See* Fed.R.Civ.P. 30(c)(1) (providing that for depositions by oral examination, "[t]he examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence . . . .").  The court therefore directs Gramaglia to present for an additional 57 minutes of deposition by Plaintiff, with all questions to be limited to those that can fairly be answered with a simple "yes" or "no" or similar answer.  Relevantly, Plaintiff's counsel is to refrain from any questions that cannot be answered

---

[9] A copy of the Deposition Guidelines is also filed as Plaintiff's Second Exh. D (Dkt. 92-5).

in such manner, including, *inter alia*, questions that are compound, argumentative, or that necessarily call for an answer in narrative form.

Accordingly, insofar as Defendant seeks a protective order against further deposition of Gramaglia, Defendant's Motion is also DENIED, and Plaintiff's Cross-Motion to Compel further deposition of Gramaglia is GRANTED.

### D.   Sanctions

Defendants seek an award of costs and feed incurred in connection with Defendants' Motion.  Defendants' Memorandum at 6-7; Defendants' Response and Reply at 6.  The denial of Defendants' Motion for a protective order renders moot Defendants' request for an award of costs and attorney fees incurred in connection with the motion.

Plaintiff also requests pursuant to Fed.R.Civ.P. 37(a)(5)(A) ("Rule 37__") an award of costs and attorney fees incurred in connection with Plaintiff's Cross-Motion to Compel.  Plaintiff's Cross-Motion Memorandum at 3; Plaintiff's Reply and Sur-Reply at 7.  "Rule 37(a)(5)(A) mandates an award of fees in connection with a successful motion to compel, unless 'after giving an opportunity to be heard' the Court determines that '(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.'"  *Hassoun v. Searls*, 524 F. Supp. 3d 101, 109 (W.D.N.Y. 2021) (quoting Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii), and *Wager v. G4S Secure Integration, LLC,* 2021 WL 293076, at *4 (S.D.N.Y. Jan. 28, 2021) ("[I]t is widely accepted that an award

of expenses under Rule 37(a)(5)(A) is mandatory unless one of the three exceptions applies.")).

Ordinarily the court must grant the party opposing a successful motion to compel an opportunity to be heard prior to deciding whether the moving party should be awarded attorney fees.  Fed.R.Civ.P. 37(a)(5)(A).  Attorney fees, however, need not be awarded where the opposing party's position was "substantially justified."  Fed.R.Civ.P. 37(a)(5)(A).  "'Substantially justified' does not mean 'justified to a high degree, but rather has been said to be satisfied if there is a 'genuine dispute,' over a legal issue." *Coleman v. Dydula*, 175 F.R.D. 177, 181 (W.D.N.Y. 1997) quoting *Pierce v. Underwood*, 487 U.S. 552, at 565 (1988) (position of party opposing an award of attorney fees "can be substantially justified if a reasonable person would think it correct.") (citing Advisory Committee's Notes on 1970 Amendments to Fed.R.Civ.P. 37(a)(4)).[10]

In the instant case, the relief sought in Plaintiff's Cross-Motion to Compel, *i.e.*, a court order directing Gramaglia's further deposition, is in direct contrast to the relief sought in Defendants' Motion, specifically, a court order protecting Gramaglia from further deposition by Plaintiff.  In these circumstances, it is clear that both Defendants' Motion and Plaintiff's Cross-Motion were necessitated by a "genuine dispute" over a legal issue such that Defendants' opposition to Plaintiff's motion was "substantially justified."  Nor have Defendants flouted the Federal Rules of Civil Procedure or this

---

[10] In 2007, Rule 37 was "slightly reworded 'as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules.'"  *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008) (quoting Advisory Committee Note to 2007 Amendments to Fed.R.Civ.P. 37.  At the same time, Fed.R.Civ.P. 37(a)(4)(A) was recodified as Fed.R.Civ.P. 37(a)(5)(A).  *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2010 WL 3992215, at * 4 n. 10 (W.D.N.Y. Oct. 12, 2010).

court's Deposition Guidelines by such conduct as failing to produce Gramaglia for deposition or instructing Gramaglia not to answer any questions posed by Plaintiff. Further, a review of the deposition transcripts establishes that Weisbeck took issue with Gramaglia's failure to respond with "yes" or "no" answers only a handful of times until just prior to Weisbeck's unilateral suspension of the second deposition session. *See*, *e.g.*, First Gramaglia Dep. Tr. at 71-72, 109-10, 128-29, and 196. Under such circumstances where Defendants' Motion demonstrates that Defendants' opposition to Plaintiff's request to further depose Gramaglia was substantially justified based on the existence of a genuine dispute on a legal issue, specifically, whether Plaintiff was entitled to ask leading questions calling for yes or no answers, permitting Defendants an opportunity to be heard regarding whether to award Plaintiff's attorney fees is unnecessary and would waste judicial resources. *See Williams v. New York State Gaming Commission*, 2024 WL 99356, at * 5 (W.D.N.Y. Jan. 9, 2024) (granting the moving party a limited award of attorney fees on a motion to compel without permitting the opposing party a separate opportunity to be heard where the arguments raised in opposition to the motion to compel were meritorious as to two of the withheld documents). Plaintiff's request for an award of attorney fees therefore DENIED.

Based on the circumstances presented in this case, Defendants' Motion for a protective order is DENIED; Plaintiff's Cross-Motion to Compel further deposition of Gramaglia is GRANTED in part and DENIED in part. Gramaglia is ORDERED to submit to an additional deposition session limited to 57 minutes, during which Plaintiff shall be permitted to ask only questions consistent with Fed.R.Evid. 611(c)(2).

**2.     Selchick's Motion to Quash and Plaintiff's Cross-Motion to Compel**

As stated above, Background and Facts, *supra*, at 3, on April 8, 2022, Selchick issued the arbitration decision resolving the disciplinary charges against McCabe and Torgalski, subsequent to which Plaintiff served Selchick with a Subpoena to Produce Documents, Information or Objects dated April 11, 2022,[11] (Dkt. 82-3) ("first subpoena"), commanding production of documents generated in connection with the resolution of the disciplinary charges ("the documents") by May 2, 2022.  In a letter dated April 25, 2022, Mr. Collins advised Plaintiff's counsel of Selchick's objections to the first subpoena (Dkt. 82-5) ("Collins's Letter") and included Selchick's objections pursuant to Fed.R.Civ.P. 45(d)(2)(B) (Dkt. 82-4) ("first subpoena objections"), asserting Collins's production of the documents in compliance with the first subpoena would necessarily violate both confidentiality and ethical obligations applicable to Selchick as an arbitrator. Plaintiff did not then respond to Selchick's first subpoena objections.  A Subpoena to Testify at a Deposition in a Civil Action dated November 10, 2023 (Dkt. 82-1) ("second subpoena") Plaintiff served on Selchick,[12] commands Plaintiff to appear on December 7, 2023, both to be deposed and to produce the same documents sought by the first subpoena.

Selchick moves to quash the second subpoena arguing it seeks testimony and disclosure of material that are privileged, confidential, and protected from disclosure because it pertains to Selchick's decision-making and thought processes as an arbitrator and that disclosure would also violate Selchick's ethical obligations as an

---

[11] The record does not indicate the date on which Selchick was served with the first subpoena.

[12] The record does not indicate the date on which Selchick was served with the second subpoena.

arbitrator to preserve the confidentiality of arbitration proceedings over which he presides.  Selchick's Memorandum at 4-7 (citing Fed.R.Civ.P. 45(d)(3)(A)(iii) and cases).  In opposition to Selchick's Motion, Plaintiff cross-moves to compel Selchick both to sit for deposition and to produce the documents, arguing Selchick improperly invokes the arbitrator privilege as shielding Selchick both from being deposed as well as from producing documents because "the power and duty to discipline members of the Buffalo Police department is [*sic*] vested in the police commissioner," essentially calling into question Selchick's standing to oppose the second subpoena, Plaintiff's Memorandum – Second Cross-Motion at 2-5, and the second subpoena is directed not at Selchick's thought processes but at the authority pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") for Selchick's decisions and potential bias.  *Id*. at 5-9.  In further support of the motion to quash, Selchick argues he was not required to produce a privilege log because the documents sought by the second subpoena are the same documents demanded by the first subpoena to which Selchick timely filed objections and that Plaintiff, by failing to challenge such objections, waived any challenge, Selchick Reply at 3, that the caselaw on which Selchick relies in moving to quash is not based on an analysis of the FAA but on the doctrine of arbitrator confidentiality or privilege rooted in preserving the arbitral process which is not unique to the FAA, *id*. at 4-5, and that Selchick's authority to arbitrate disciplinary disputes between the City and the Buffalo Police Benevolent Association ("PBA") is found in a May 5, 2014 Memorandum of Agreement the City and the PBA (Dkt. 99-3) ("Memorandum of Agreement") which appoints Selchick as the Hearing Officer mutually selected by the City and the PBA to

provide over disciplinary matters and whose opinions and awards "shall be final and binding on all parties."  Memorandum of Agreement ¶¶ 3, 8.

Plaintiff argues that Selchick is without standing to assert the arbitrator privilege because Selchick was never properly vested with the power and duty to discipline members of the Buffalo Police and that such power lies only with the Police Commissioner, Plaintiff's Memorandum – Second Cross-Motion at 2-5, an argument Selchick strongly opposes.  Selchick Reply at 4-6.  Although not raised by the parties, it is not Selchick who is without standing to challenge Selchick's authority as an arbitrator, but Plaintiff, who was not a party to the arbitration proceedings.  *See Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir. 1994) (individual who is not a party to an arbitration proceeding is without standing to challenge the proceeding); *Clarke v. Board of Education of City School*, 185 N.Y.S.3d 8, 10 (1st Dep't 2023) (holding petitioners who were not parties to the arbitration proceedings are without standing to challenge the arbitration decision including the arbitrator's authority to render the award).  Here, because Plaintiff was not a party to the arbitration proceedings, he is without standing to challenge any part of the proceedings including Selchick's authority to preside over the arbitration proceedings and issue the arbitration decision.

Regarding the documents requested by Plaintiff in both the first and second subpoenas, initially, there is no merit to Selchick's argument, Selchick's Reply at 3, that Plaintiff failed to timely move to compel production of the documents requested by the first subpoena, instead waiting more than a year and a half to request the same documents by serving the second subpoena.  Rather, Fed.R.Civ.P. 45(d)(2)(B)(1) provides that after a requested party objects to the production of documents sought by a

subpoena, "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection."  Accordingly, Plaintiff was not required to object within a specific amount of time to Selchick's objection to production.

Selchick maintains, and Plaintiff does not dispute, that the only documents in his possession pertain to on-going grievance arbitrations between the City of Buffalo, the Buffalo Police Department, and the Buffalo PBA, Selchick Declaration ¶ 5, and that Selchick's "'disclosure plainly would intrude upon the analytical basis for the arbitrator's decision, an area that is generally, and properly, viewed as not subject to inquiry. . . .'" Selchick's Memorandum at 6 (quoting *Nat'l Hockey League Players' Ass'n v. Bettman*, 1994 WL 38130, at * 7 (S.D.N.Y. Feb. 4, 1994)).  Plaintiff, however, maintains the second subpoena is directed toward Selchick's potential bias in arbitrating the disciplinary charges against McCabe and Torgalski.  Plaintiff's Second Memorandum of Law at 5-9.

"[I]n the context of a claim of arbitral bias, the court may insist that the challenging party proffer some evidence of arguable misconduct before permitting discovery, particularly if it is addressed to the arbitrator."  *Nat'l Hockey League Players' Ass'n*, 1994 WL 38130, at *7 (citing *Lyeth v. Chrysler Corp.,* 929 F.2d at 899 (citing *Andros Compania Maritina, SA. v. Marc Rich & Co., A.G.,* 579 F.2d at 702), and *Nasta v. Paramount Pictures Co.,* 1991 WL 183353 at *4 (S.D.N.Y. Sept. 11, 1991)).  In the instant case, not only has Plaintiff provided absolutely no evidence of arguable misconduct by Selchick to justify requiring disclosure of the requested documents, but insofar as Plaintiff seeks the subject documents to establish bias on the part of Selchick

in rendering the arbitration decision Plaintiff's lack of standing to challenge the arbitration decision likewise renders Plaintiff without standing to seek the documents on which Selchick relied in rendering the arbitration decision.

Selchick's Motion to quash his deposition should therefore be GRANTED and Plaintiff's Second Cross-Motion to Compel the deposition should be DENIED.[13]

## 3.  Plaintiff's Motions to Compel and to Expedite

Plaintiff moves pursuant to Fed.R.Civ.P. 37 and 30(d)(3) as well as the court's inherent power to compel non-party witness John Evans ("Evans"), President of the Buffalo PBA, to complete his deposition uninterrupted or influenced by outside direction, including by reading from an index card prepared prior to the deposition by Evans's counsel.  Plaintiff's Motion to Compel pertains to Evans's January 12, 2024, deposition by Plaintiff, pursuant to the deposition subpoena dated May 27, 2021, directed to "President John Evans, Buffalo Police Benevolent Association" ("the deposition subpoena").[14]  Appearing at the deposition for Plaintiff was Melissa D. Wischerath, Esq. ("Wischerath"), with Rodney O. Personius, Esq. ("Personius"), appearing with Evans. Prior to Evans's deposition, Personius and Wischerath exchanged e-mails clarifying that Evans was to be deposed in his individual capacity rather than as President on behalf of the PBA.  *See* Personius Response Exh. E (Dkt. 101-1 at 16-25).  In the final e-mail exchanged between Personius and Wischerath on January 10, 2024, Wischerath states that the deposition of Evans is to be "as an individual and not as a representative of the PBA."  Dkt. 101-1 at 17.

---

[13] A pretrial request to quash a deposition subpoena is a nondispositive matter. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir.), *cert. denied,* 498 U.S. 846 (1990).

[14] A copy of the deposition subpoena is filed as Plaintiff's Second Exh. E (Dkt. 92-6).

Shortly after the deposition commenced, the following colloquy occurred:

| | |
|---|---|
| Weischerath: | So regarding the firearms training, do you want to see a higher frequency, so that it's not just going on once a year, that it be, maybe, what, do you have a number? Do you want it to be like biannual, quarterly? |
| Evans: | Quarterly. |
| Wischerath: | Sorry. Was there just a note handed? |
| Personius: | Yes. You can read it into the record. |
| Evans: | I do not have the authority in my individual capacity to respond to your question. |
| Wischerath: | Did you type that out, Mr. Personius? |
| Personius: | I did. |

Evans Dep. Tr.[15] at 38.

The note Personius admitted handing Evans is a 3" by 5" index card ("the first index card") on which was typewritten, "I do not have authority in my individual capacity to respond to your question." Dkt. 92-1 at 2; Evans Dep. Tr. at 38. Typewritten on a second index card that not passed to Evans by Personius, was "I have no personal knowledge regarding this subject." Dkt. 92-1 at 3; Evans Dep. Tr. at 51. Personius stated that he intended to hand the notes to Evans whenever Evans was asked a question that Personius considered was outside the scope of Evans's personal knowledge and that Evans's deposition was limited to questions to be answered by Evans in his individual capacity, rather than seeking Evans's opinions, beliefs and concerns as Buffalo PBA president. Evans Dep. Tr. at 38-40. Personius further stated that the index cards would not have been needed if Wischerath had complied with Personius's earlier request to identify the subjects Wischerath intended to cover at the deposition. *Id*. at 41. Evans's deposition was suspended less than 90 minutes after it commenced to permit Wischerath to obtain the court's guidance. *Id*. at 48-49.

---

[15] References to "Evans Dep. Tr." are to pages of the January 12, 2024 deposition of Evans, a copy of which is filed as Plaintiff's Second Exh. C (Dkt. 92-4).

In support of Plaintiff's Motion to Compel, Plaintiff argues Personius's use of the index cards during Evans's deposition to limit Evans's answers to deposition questions was prohibited by case law, the Local Rules of Civil Procedure for the Western District of New York, and the undersigned's Deposition Guidelines.  Plaintiff's Memorandum - Motion to Compel, at 3-4.  In opposition, Evans maintains the index cards were used only to assist Evans in distinguishing between questions directed to him in his individual capacity, which were proper, and questions directed to Evans as President of the Buffalo PBA, which were not proper, Evans's Response at 1-2, and that motion practice could have been avoided if Plaintiff had advised Evans of the topics Plaintiff intended to address during the deposition.  *Id*.  In reply, Plaintiff argues that Personius's interference with Evans's deposition was "blatant, improper, and undisputed," Plaintiff's Reply – Motion to Compel at 2-3, there is no right for an attorney to confer or pass notes regarding objections which should instead be preserved by objection, *id*. at 3-4, and Evans's subsequently asserted excuse pursuant to Fed.R.Civ.P. 32(d)(3)(A) ("An objection to a deponent's competence--or to the competence, relevance, or materiality of testimony--is not waived by a failure to make the objection before or during the deposition, unless the ground for it might have been corrected at that time") to justify use of the notes is without merit.  *Id*. at 4-6.  Plaintiff further maintains that although the subpoena Plaintiff served on Evans, a nonparty, was pursuant to Fed.R.Civ.P. 30(a)(1) permitting the deposition of any person without leave of court, instead of Fed.R.Civ.P. 45(a)(1)(A), Evans conflates the deposition with one pursuant to Fed.R.Civ.P. 30(b)(6) pertaining to a governmental agency or organization for which advance notice as to the matters to be raised at the deposition is required.  *Id*. at 6-10.  Plaintiff also repeated his

request for sanctions against Evans.  *Id*. at 10-11.  In further opposition, Evans reiterates that pursuant to Fed.R.Civ.P. 32, he was required to assert competency objections, particularly regarding questions posed to Evans pertaining to his capacity as President of the Buffalo PBA, lest they be waived.  Personius Sur-Reply Declaration ¶¶ 3-6.

Preliminarily, Plaintiff's Motion to Expedite (Dkt. 93), also filed on January 12, 2024, seeks, pursuant to Local Rule of Civil Procedure to the Western District of New York 7(d), expedited relief on Plaintiff's Motion to Compel because the Fifth Amended Scheduling Order then in effect, Dkt. 74), set March 5, 2024 as the deadline for depositions.  Given March 5, 2024 has since elapsed, and a Sixth Amended Scheduling Order (Dkt. 111) filed May 17, 2024 sets September 11, 2024 as the cutoff for fact depositions, Plaintiff's Motion to Expedite is DISMISSED as moot.

With regard to Plaintiff's Motion to Compel, Rule 30(a) permits a party to depose any person without leave of court, and Rule 30(a)(1) provides that the "attendance of witnesses may be compelled by subpoena as provided in Rule 45."  The court observes that Evans's attendance at the deposition was pursuant to a Rule 45 subpoena.  Rule 30(b)(6), which provides the method for taking the deposition of a corporation, partnership, or association, requires the deposing party only name the entity to be deposed subsequent to which "[t]he burden then falls on the named entity to 'designate one or more officers, directors, or managing agents, or other persons' to testify on its behalf, and these persons must testify as to the matters known to the entity."  *Price Waterhouse LLP v. First American Corp.*, 182 F.R.D. 56, 61 (2d Cir. 1998) (quoting Fed.R.Civ.P. 30(b)(6)).  "Rule 30(b)(6) of the Federal Rules of Civil Procedure provides

that deposition notices to corporations 'must describe with reasonable particularity the matter for examination.'" *Henderson v. Rite Aid of New York, Inc.*, 2017 WL 11724424, at *3 (W.D.N.Y. July 10, 2017) (quoting *Innomeds Labs, LLC v. Alza Corp.,* 211 F.R.D. 237, 240 (S.D.N.Y. 2002)).  "'The purpose of this rule is to avoid the difficulties encountered by both sides when the party to be examined is unable to determine who within the corporation would be best able to provide the information sought.'"  *Id*. Further, the requirements for deposing an association or entity pursuant to Rule 30(b)(6) also apply to a Rule 45 subpoena compelling a non-party witness's attendance at a deposition.  *Id*.  In the instant case, given the asserted confusion over whether Evans was to be deposed as an individual, or on behalf of the PBA as its president, Mr. Personius could have stated and on the record prior to the deposition the perceived lack of clarity caused by the deposition subpoena and subsequent e-mails so as to preserve any objections to questions posed to Evans during the deposition, including those seeking Evans's response not as an individual, but as a representative of the PBA.  The issue of clarifying Evans's status at the deposition, however, was not brought up until the end of the brief deposition of Evans.  *See* Evans's Dep. Tr.[16] at 35-52.  Accordingly, the court considers Personius's conduct in providing typewritten notes for Evans's guidance in responding to deposition questions.

"'It is well settled that it is inappropriate for an attorney to influence or coach a witness during a deposition.'"  *Ladino v. Cordova*, 2023 WL 2915402, at *7 (E.D.N.Y. Apr. 12, 2023) (quoting *Musto v. Transp. Workers Union of Am.*, 2009 WL 116960, at *1 (E.D.N.Y. Jan. 16, 2009) (collecting cases)).  Plaintiff cites no caselaw concerning an

---

[16] References to "Evans's Dep. Tr." are to the pages of the transcript of the January 12, 2024 deposition of Evans, filed as Plaintiff's Second Exh. C (Dkt. 92-4).

attorney passing a note to a witness during the witness's deposition, the court's research reveals only a single case among all federal courts.  In particular, in *Mealy v. Gautreaux*, 2019 WL 3216516, at *6 (M.D. La. July 16, 2019), the district court determined that the defendant's attorney's passing a note to a witness during a deposition," advising the witness "not to provide factual information with respect to the existence of a . . . report" was an improper feeding of information to the witness that "unduly interfered with the deposition, unreasonably prolonged the deposition, and prejudiced Plaintiff by frustrating the fair examination of the deponent."  *Mealy*, 2019 WL 3216516, at *6 (citing *Hall v. Clifton Precision, a Div. of Litton Sys., Inc.*, 150 F.R.D. 525, 528 (E.D. Pa. 1993) ("There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers.")).

Further, as relevant, the undersigned's Deposition Guidelines provide,

(4)	Counsel shall not make objections or statements which might suggest an answer to a witness. Counsels' statements when making objections should be succinct and verbally economical, stating the basis of the objection and nothing more.
(5)	Counsel and their witness/clients shall not initiate or engage in private off-the-record conferences during depositions or during breaks or recesses, except for the purpose of deciding whether to assert a privilege.

Based on a plain reading of the deposition transcript, it is readily apparent that the provision of an index card bearing a pre-planned response constitutes a statement made by Evans's counsel suggesting an answer in violation of deposition guideline 4, and the passing of the index care could be construed as a "private off-the-record conference" between Personius and Evans in violation of deposition guideline 5.

The interference with a deposition is grounds for sanctions.  See Fed.R.Civ.P. 37(b)(5).  Accordingly, Personius and Evans are directed to show cause, not later than June 24, 2024, why Plaintiff's attorney fees incurred in connection with the deposition proceedings on January 12, 2024, and in successfully moving to compel should not be awarded to Plaintiff.  Plaintiff's response shall be filed not later than July 8, 2024.  Oral argument shall be at the court's discretion.

Plaintiff's Motion to Compel is GRANTED.


## CONCLUSION

Based on the foregoing, Defendants' Motion for a Protective Order (Dkt. 79) is DENIED; Plaintiff's Cross-Motion to Compel (Dkt. 81) is GRANTED in part and DENIED in part; Selchick's Motion to Quash (Dkt. 82) is GRANTED; Plaintiff's Motion to Compel (Dkt. 92) is GRANTED; Plaintiff's Motion to Expedite (Dkt. 93) is DISMISSED as moot; and Plaintiff's Second Cross-Motion to Compel (Dkt. 98) is DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dates:  May 30, 2024
        Buffalo, New York