UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| MARTIN GUGINO, | **OBJECTIONS TO DECISIONS AND ORDERS FILED AS** |
| Plaintiff, | **DKT # 121 AND 136** |
| v. | Civ. No. 21-CV-283-LJV-LGF |
| CITY OF BUFFALO, *et al.*, | |
| Defendants. | |

_____

Rodney O. Personius, Esq., through counsel Personius Melber LLP, Joseph M. Guerra, III, Esq., of counsel, hereby submits these Objections to the Decisions and Orders of Hon. Leslie G. Foschio, United States Magistrate Judge, filed as Docket # 121 and 136:

### Preliminary Statement

1. By way of a text order entered on March 22, 2021, the District Court referred this action to Hon. H. Kenneth Schroeder, Jr., United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) (Dkt #6). Due to the recusal of Magistrate Judge Schroeder, this action was reassigned to Hon. Leslie G. Foschio, United States Magistrate Judge.

2. By way of a motion filed January 12, 2024, counsel for Plaintiff moved pursuant to Fed. R. Civ. P. ("Rule") 30(d)(3) and 37 to compel non-party witness Buffalo PBA President John Evans to answer all questions posed to Mr. Evans during his deposition and for sanctions against his counsel, Rodney O. Personius, Esq. (Dkt #92, 92-1 to 92-5).

3. After briefing by the Plaintiff and Mr. Personius (Dkt #101-104), by way of a Decision and Order filed on May 30, 2024, Magistrate Judge Foschio granted Plaintiff's motion

1

to compel and ordered Mr. Personius and Mr. Evans to show cause why the sanction of attorney fees should not be awarded to the Plaintiff (Dkt. #112, p. 31-37).

4. Following further briefing by the Plaintiff and Mr. Personius (Dkt #114-116), Magistrate Judge Foschio granted Plaintiff's motion for sanctions as against Mr. Personius and directed Plaintiff to file an affidavit of costs including attorney fees (Dkt #121).[1]

5. Following further briefing by the Plaintiff and Mr. Personius regarding the propriety and amount of sanctions (Dkt #122, 124, 125, 129), Magistrate Judge Foschio cut the amount of attorney fees requested by Plaintiff by about two-thirds and awarded Plaintiff $6,105 in attorney fees and $916.40 in costs, for a total of $7,021.40 to be paid within 30 days (Dkt #136).

6. The following are Mr. Personius' objections to both the order granting sanctions (Dkt #121), and the order setting the amount of the sanction (Dkt #136).

## **Standard of Review**

7. Pursuant to Rule 72(a):

A party may serve and file objections to [a nondispositive] order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

8. Pursuant to Loc. R. Civ. P. ("Local Rule") 72(a):

All orders of the Magistrate Judge authorized by 28 U.S.C. § 636(b)(1)(A) shall be effective unless and until a stay is obtained or the order is otherwise reversed or vacated by the District Judge. In the event a party files objections, the specific matters to which a party objects and the manner in which it is claimed that the order is clearly erroneous or contrary to law shall be clearly set out in the objections.

---

1. By way of a text order, the Court granted Mr. Personius' motion to extend the time to file objections to the order granting sanctions until 14 days after Magistrate Judge Foschio's determination of the attorney fees and costs owed as a sanction (Dkt #126).

**Matters Objected To**

9. The Decisions and Orders of Magistrate Judge Foschio are clearly erroneous and contrary to law in the following manner:

(a) the Magistrate Judge failed to apply the requirements of Rule 37(a) to Plaintiff's motion for sanctions:

(b) the Magistrate Judge failed to apply the requirements of Rule 37(b)(5)(A)(i) to Plaintiff's motion for sanctions;

(c) the Magistrate judge failed to consider the purpose of sanctions prior to imposing sanctions in this action;

(d) the Magistrate Judge failed to consider all the facts and circumstances leading up to the deposition of Mr. Evans prior to imposing sanctions such that an award of sanctions is unjust.

**Statement of Facts**

10. A detailed recitation of the facts and circumstances leading up to the deposition of John Evans is necessary for a proper determination of these objections.

**Prior to Deposition of John Evans**

11. On May 27, 2021, a deposition subpoena was issued for "PRESIDENT JOHN EVANS BUFFALO POLICE BENEVOLENT ASSOCIATION." The subpoena required that Mr. Evans "or your representatives, must bring with you to the deposition" the documents and records set forth in Exhibit A to the subpoena. The subpoena was returnable on September 1, 2021 (Dkt #114-1, p. 2). Exhibit A to the subpoena listed seven categories of documents, records, and recordings, all of which were exclusively records of the Police Benevolent Association ("PBA") (Dkt #114-1, p. 5).

12. As set forth in a declaration of Mr. Personius, the accuracy of which was never contested by Plaintiff, he became aware of the subpoena sometime in mid-August 2021 when he was retained by the PBA in this matter (Dkt #101, p. 2, ¶¶ 7-9). Upon contacting counsel for the Plaintiff regarding compliance with the subpoena, Mr. Personius was informed on August 19, 2021, that "[t]he time for production (quash/objections) has long since passed so we are planning on making a motion to the Court." (Dkt #101, p. 2, ¶ 12; Dkt #101-1, p. 5). No such motion was ever made by Plaintiff's counsel.

13. Thereafter, Mr. Personius exchanged several emails with counsel for Plaintiff regarding the scheduling of Mr. Evans' deposition, informing them that document production issues needed to be resolved and that Mr. Personius was unavailable and out of the office the week of August 30th, which included the September 1st return date of the subpoena. Mr. Personius requested that the deposition be rescheduled for another date in September (Dkt. #101, p. 3-4, ¶¶ 15-18). While Mr. Personius was out of the office, a letter dated September 2, 2021, was sent from Plaintiff's counsel to Mr. Personius stating that "[t]he Police Benevolent Association, is in default responding to the subpoena," that "we are moving forward with filing an appropriate motion to enforce the subpoena and impose whatever penalties, if any, are appropriate," and that "we intend to move forward with a motion to compel [Mr. Evans'] appearance and impose whatever penalties, if any are appropriate." (Dkt #101, p. 4, ¶¶ 19-22). Notwithstanding counsel's second and third threats to file a motion, no such motion was filed (Dkt #101, p. 4, ¶ 23).

14. The 1,000-plus page document production by the PBA in response to the subpoena was provided to Plaintiff's counsel under cover of a letter dated September 17, 2021 (Dkt #101, p. 25, ¶ 25; Dkt #101-1, p. 14-15). Following the document production, no motion practice was

initiated by Plaintiff's counsel and no effort made to schedule Mr. Evans' deposition for more than two years (Dkt #101, p. 5, ¶ 26).

15. Counsel for Plaintiff eventually contacted Mr. Personius in December 2023 to schedule Mr. Evans' deposition. Mr. Personius then exchanged a series of communications with Plaintiff's counsel regarding whether Mr. Evans' deposition was in his individual capacity or as a representative of the PBA as stated in the subpoena. If the deposition was as a representative of the PBA, Mr. Personius requested that a Rule 30(b)(6) disclosure be provided (Dkt #101, p. 5-7, ¶¶ 28-41). Plaintiff's counsel confirmed that the deposition was to be in Mr. Evans' individual capacity (Dkt #101-1, p. 18 ["We intend to proceed with his individual deposition on 1/12 at 10 am at our offices."]).

**Deposition of John Evans**

16. The deposition of John Evans was held on January 12, 2024 (Dkt #92-4, p. 1). As questioning of Mr. Evans by Plaintiff's counsel turned to subjects within Mr. Evans' role as President of the PBA, Mr. Personius noted his concern that the deposition was turning to matters beyond an individual deposition of Mr. Evans (Dkt #92-4, p. 35-37). Mr. Personius offered Plaintiff's counsel a chance to go off the record to discuss the issue. That offer was not accepted (Dkt #92-4, p. 37).

17. As questions continued regarding Mr. Evans' role as President of the PBA, Mr. Personius handed Mr. Evans a note card. Mr. Evans read the card into the record "I do not have authority in my individual capacity to respond to your question." (Dkt # 92-4, p. 38).[2] Thereafter a discission ensued between Mr. Personius and Plaintiff's counsel regarding Mr. Evans being questioned about PBA matters during his individual deposition. Mr. Personius noted his concern

---

2. So the record is clear, in hindsight, the note card should not have been used.

5

that questioning of Mr. Evans had turned to matters within his capacity as PBA President after Mr. Personius had been assured the deposition was in Mr. Evans' personal capacity (Dkt 92-4, p. 38-42).

18. Plaintiff's counsel responded:

> I don't think that's even a legal term of art, but I guess we're going to have the Judge -- let's just take a break, and I'm going to come back and decide if we're going to continue or -- give me one minute. Because if we do break, have to make a motion, we're going to have to seek costs and –

(Dkt #92-4, p. 42).

19. In an attempt to resolve the issue and continue the deposition, Mr. Personius suggested that Magistrate Judge Foschio be contacted:

> We can just call the Judge, you don't need to make a motion. We can call the Judge and discuss it if you wish.

(Dkt # 92-4, p. 42). Plaintiff's counsel refused this offer (Dkt #92-4, p. 42) ("I think it's important for him to have the transcript.").[3]

20. After the break, Plaintiff's counsel noted that Magistrate Judge Foschio's Deposition Guidelines had been marked as an exhibit (Deposition Exhibit 61; Dkt #92-5), and that "I requested that Mr. Personius review it and make a decision as to how he wants to proceed today." (Dkt #92-4, p. 43).

21. Mr. Personius responded by first noting the previous back-and-forth with Plaintiff's counsel regarding the capacity in which Mr. Evans was to be deposed. Mr. Personius also noted that, after reviewing the Deposition Guidelines, he wanted to discuss the effect of the Guidelines with Mr. Evans and make a recommendation as to continuing the deposition (Dkt #92-4, p. 44-

---

3. Counsel's concern about Magistrate Foschio having the transcript ignores the common procedure of contacting a judge during a deposition if necessary to resolve an issue in order that the deposition can continue.

46). Plaintiff's counsel, based on the Deposition Guidelines, refused to allow Mr. Personius the opportunity to consult with Mr. Evans in order to continue the deposition:

> Ms. Wischerath responded that no, she would not give me an opportunity to talk to my client about Magistrate Judge Foschio's guidelines and what my thoughts were regarding the effect of those guidelines on this examination. So absent the opportunity to consult with my client before we proceed, if, on that basis, Ms. Wischerath insists on stopping the deposition now and filing a motion, we're prepared to respond.

(Dkt #92-4, p. 46). Plaintiff's counsel reiterated her opposition to the deposition on the condition of Mr. Personius first conferring with Mr. Evans (Dkt # 92-4, p. 47).

22. As Mr. Personius set forth to Magistrate Judge Foschio, his purpose for conferring with Mr. Evans was as follows:

> 82. As set forth above, following a review of the Court's Guidelines, Declarant had announced to Ms. Wischerath that a means of moving forward with the examination had been identified by Declarant, which needed to be first presented to and approved by the client (John Evans). The record shows that Ms. Wiscerath would not agree to this protocol.
>
> 83. After reading the Guidelines, and being fully refreshed as to their content, Declarant had focused upon ¶¶ 2 and 10 regarding the handling of objections. In particular, the following statement in ¶10 of the Guidelines was found to be noteworthy: "Examining counsel shall not engage in any argument with opposing counsel as to these issues, rather his objection shall be taken on the record and appropriate relief from the court may be sought upon completion of the examination." The rule continues by stating that counsel for the witness needs to follow the same procedure.
>
> 84. Upon the basis of this statement in ¶10, Declarant intended to inform Mr. Evans that the examination could go forward, provided Ms. Wischerath was in agreement, by noting on the record an objection to any question posed by Ms. Wischerath with the understanding the objection would preserve for later determination by the Court the issue outlined above regarding the capacity in which testimony was being taken from Mr. Evans.
>
> 85. In fact, following the examination, this proposal was discussed with Mr. Evans, who agreed that it would have been an appropriate method for continuing the examination.

(Dkt #101, p. 13-14, ¶¶ 82-85).[4]

**Post-Deposition Communications**

23. Upon returning to his office after the deposition and conferring with Mr. Evans, Mr. Personius sent the following email to Plaintiff's counsel at 4:30 PM on the day of the deposition, January 12, 2024:

> Melissa: After we left your office this morning, I was able to discuss with Mr. Evans the recommendation I had in mind after reviewing Magistrate Judge Foschio's deposition rules. When I attempted to do so in the deposition room, you had objected to me speaking with Mr. Evans, which led to ending the deposition.
>
> My thought had been that, pursuant to Rules 2 and 10, we could have agreed that I would object to your questions that I viewed as being improperly directed to Mr. Evans in his official capacity, he would still respond, and we would then be given the opportunity to later address the admissibility of that testimony with the Court. Mr. Evans is agreeable to that approach.
>
> We offer this information to better information[sic] your decision making regarding the need for motion practice. Should you choose to pursue that alternative, we will bring this email to the court's attention as further evidence of our good faith effort to resolve the underlying issue.

(Dkt #101, p. 14, ¶ 86; Dkt #101-1, p. 42).

24. Without responding to Mr. Personius' email and further attempt to resolve the underlying dispute without court involvement, Plaintiff's counsel filed the motion for sanctions almost two hours later, at 6:21 PM and emailed the motion to Mr. Personius at 6:27 PM (Dkt #101, p. 14, ¶ 87; Dkt #101-1, p. 44-45).

---

4. The deposition concluded with a discussion between Mr. Personius and Plaintiff's counsel as to the propriety of Plaintiff's counsel taking without permission another note card from Mr. Personius' deposition materials and attempting to have it marked as an exhibit (Dkt #92-4, p. 49-52).

Magistrate Judge Foschio's initial Decision and Order found that the passing of the note card by Mr. Personius to Mr. Evans to have been interference with the deposition and the basis of the order to show cause why sanctions should not be imposed (Dkt 112, p.35-37).

## Prior Proceedings

**Plaintiff's Motion for Sanctions**

25. Plaintiff's motion to compel Mr. Evans to answer all questions posed to him at his deposition and for sanctions against Mr. Personius was brought pursuant to Rules 30(d)(3) and 37, and the Court's inherent powers (Dkt #92). The basis of the motion was the passing of the note card by Mr. Personius to Mr. Evans as set forth above (Dkt 92-1, p. 1-4). The Memorandum of Law in support of the motion made the following statement:

> Plaintiff's counsel requested that an agreement be made to follow the Foschio rules so the deposition could proceed, but Mr. Personius replied to [sic] "Go ahead and file your motion." Exhibit C at 47:13-14.

(Dkt #92-1, p. 3). As set forth above, however, upon reviewing the Deposition Guidelines, Mr. Personius agreed that they should be followed and requested an opportunity to discuss the Guidelines with Mr. Evans. It was the refusal of Plaintiff's counsel to allow Mr. Personius to consult with Mr. Evans which led to Plaintiff's counsel ending the deposition.

26. A declaration filed by Mr. Personius in response to the motion to compel and sanctions set forth the background of his dealings with Plaintiff's counsel before, during and after the deposition of Mr. Evans (Dkt #101). The declaration further set forth his research into the difference between Mr. Evans' testimony and as an individual and as a representative of the PBA (Dkt #101, p.7-8, ¶¶ 42-49). A Memorandum of Law was also filed setting forth decisional support for the actions undertaken during the deposition of Mr. Evans (Dkt #102). Reiterated in the Memorandum was Mr. Personius' willingness to continue the deposition after consulting with Mr. Evans regarding the Deposition Guidelines. Mr. Personius viewed such consultation as mandated by the District's Civility Rules (Dkt #102, p. 2-3).

27. Plaintiff's Reply Memorandum of Law relied on the use of the note card during the deposition as establishing Mr. Personius' interference with the deposition and argued against Mr. Personius' reliance on counsel for Plaintiff's agreement that Mr. Evans was to be deposed in his individual capacity (Dkt #103). The Plaintiff's Reply Memorandum did not dispute Mr. Personius' offer to continue the deposition without a motion.

28. Mr. Personius' Surreply Declaration reinforced his desire to have Mr. Evans continue his deposition testimony after conferring with him regarding the Deposition Guidelines and his later offer to continue the deposition without a motion to the Court (Dkt #104).

29. By way of a Decision and Order, Magistrate Judge Foschio resolved the motion for sanctions against Mr. Personius, as well as similar motions filed by the actual parties to the underlying action (Dkt #112).[5]

30. In the Decision and Order, Magistrate Judge Foschio cited a district court decision criticizing an attorney's passing of a note to a witness during a deposition (Dkt #112, p. 36). In determining whether Mr. Personius should show cause why sanctions should not be imposed against him, Magistrate Judge Foschio relied on two provisions of his Deposition Guidelines: (4) prohibiting statements which suggest an answer to a witness; and (5) prohibiting off-the-record

---

5. As set forth above, the deposition of Mr. Evans did not continue because counsel for Plaintiff would not let Mr. Personius consult with Mr. Evans in order that Mr. Evans' testimony could continue. It was Judge Foschio's Deposition Guidelines that counsel for Plaintiff relied on to not agree to the consultation (Dkt #92-4, p. 47) ("it's clearly spelled out in the Foschio rules that there aren't to be conferences * * * with your client").

In contrast to the deposition of Mr. Evans, counsel for Plaintiff brought a motion to compel and for sanctions against Defendant Deputy Police Commissioner Joseph Gramaglia because Commissioner Gramaglia's attorney *would not consult with him* during the deposition:

[Plaintiff's counsel]; I'm going to ask the court for an order to compel this witness to answer that question yes or no, unless you want to speak with him, because I'm entitled to simple yes or no answers.
* * *
[Plaintiff's counsel]: And if you want – if you don't want to speak to your witness to answer that question yes or no, we're going to stop right now, and I'm going to bring a motion.
(Dkt #112, p. 20).

conferences between counsel and their witness/client.[6] The Judge also found that such interference was grounds for sanctions pursuant to Rule 37[a](5). As a result, Mr. Personius was directed to show cause why sanctions should not be imposed (Dkt #112, p. 37).

**Proceedings on Order to Show Cause**

31.     In his declaration and Memorandum of Law in response to the order to show cause, Mr. Personius relied on three grounds as to why sanctions were inappropriate (Dkt # 114, 115). The grounds were that Rules 37(a) and 37(a)(5)(i) had not been complied with by counsel for the Plaintiff; Mr. Personius' objection to Mr. Evans testifying as a PBA representative was substantially justified; and an award of expenses to Plaintiff would be unjust (Dkt #115, p. 3-15).

32.     Plaintiff's reply asserted that, contrary to what actually transpired at the deposition of Mr. Evans, it was counsel for Plaintiff who attempted to confer in order to avoid the motion to compel (Dkt #116, p.3). Plaintiff, ignoring Rule 30(d)(3)(C), also argued that Rule 30(d)(2) provided a basis for the imposition of sanctions (Dkt #116, p. 4). Lastly, Plaintiff argued that the actions of Mr. Personius were not substantially justified (Dkt #116, p. 4).

33.     By way of a Decision and Order filed September 26, 2024, Magistrate Judge Foschio found that the passing of the note by Mr. Personius interfered with Mr. Evans' deposition, thereby justifying an award of sanctions pursuant to Rules 30(d)(3) and 37(a)(5) (Dkt #121, p. 3-

---

6. Ultimately, Deposition Guideline (5) was not relied on by Magistrate Judge Foschio in imposing the sanctions hereby appealed from. That Guideline provides:

> Counsel and their witness/clients shall not initiate or engage in private off-the-record conferences during depositions or during breaks or recesses, except for the purpose of deciding whether to assert a privilege.

It would appear clear that the purpose of this Guideline is to prevent coaching, and similar conduct, by an attorney during a deposition. It does not appear to apply to conferences used to determine whether testimony will be provided or not based on a privilege. In this case, the purpose of Mr. Personius' requested consultation with Mr. Evans, which took place after the deposition in any event, was designed to remove any capacity objection to Mr. Evans' testimony, allow him to testify freely, and not to suggest the substance of any answer.

11

4).[7] Magistrate Judge Foschio also found that, pursuant to Rule 37(a)(5)(A)(ii) and (iii), Mr. Personius' conduct was not substantially justified and an award of expenses would not be unjust (Dkt #121, p. 5-8). Mr. Personius' argument regarding Plaintiff's non-compliance with Rules 37(a) and 37(a)(5)(A)(i) was not addressed.

34. Magistrate Judge Foschio directed the filing of an affidavit of costs by Plaintiff's counsel, with a response by Mr. Personius (Dkt #121, p. 8).

**Determination of Sanction**

35. By way of a declaration, counsel for Plaintiff sought as a sanction, $916.40 in costs and $17,617.50 in attorney fees, for a total of $18,533.90 (Dkt #122).

36. The response declaration by Mr. Personius reinforced the discretionary nature of a sanction and argued that the facts of this case do not warrant the exercise of discretion in favor of an award of a sanction (Dkt #124, p. 2, ¶¶ 5-6). The declaration further challenged the number of hours and activities for which counsel for Plaintiff were requesting an award of attorney fees (Dkt #124, p. 3-6, ¶¶ 10-18).

37. A reply declaration of Plaintiff's counsel challenged a reduction in the number of attorney hours for which a sanction should be ordered. Due to additional work, an increase in attorney fees was requested resulting in a total requested sanction of $19,478.90 (Dkt #125, p. 4-6). In a sur-reply, Mr. Personius further challenged the number of attorney hours for which the Plaintiff requested a sanction (Dkt # 129, p. 2-3).

---

7. For the first time in the sanction proceedings, Magistrate Judge Foschio found that the Deposition Guidelines had the effect of a court order and, therefore, determined that sanctions were also appropriate pursuant to Rules 16(f)(1)(C) and 37(b)(2)(A). As was later pointed out by Mr. Personius, however, the Amended Case Management Order relied on by Magistrate Judge Foschio as the "court order" had been entered in the case prior to Mr. Personius' involvement in the subpoena served on Mr. Evans, and while binding on the parties, the order was never directed to a non-party (Dkt #124, p.3). In the Decision and Order setting the amount of the sanction, Magistrate Judge Foschio recognized this argument by Mr. Personius and did not order sanctions pursuant to Rules16(f)(1)(C) and 37(b)(2)(A) (Dkt #136, p. 5-6).

38. In a Decision and Order filed on May 1, 2025, Magistrate Judge Foschio cut the number of hours Plaintiff's counsel had sought as a sanction. Awarded was $6,105 in attorney fees and costs of $916.40, for a total sanction of $7, 021.40, payable within 30 days (Dkt #136, p. 6-9). Magistrate Judge Foschio did not explicitly address Mr. Personius' argument that his discretion, under the facts of this case, should not be exercised in favor of an award of a sanction.

### Argument

**I. Plaintiff's Failure to Comply With Rule 37 Precludes an Award of a Sanction**

39. As set forth above, Magistrate Judge Foschio relied on Rule 30(d)(2) as a basis to award sanctions against Mr. Personius for what he found to be interference with the deposition of Mr. Evans (Dkt # 121, p. 4; Dkt # 136, p. 6). As found by Magistrate Judge Foschio, pursuant to Rule 30(d)(3)(C), "Rule 37(a)(5) applies to an award of expenses" (Dkt # 121, p. 4-5; Dkt #136, p. 6).

40. Never mentioned by Magistrate Judge Foschio, or refuted by Plaintiff, a Rule 37(a) motion to compel discovery, must comply with a prerequisite:

> The motion [to compel disclosure or discovery] must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

(Rule 37[a][1]). As pointed out by Mr. Personius, no such certification was ever filed by counsel for Plaintiff. Nor could such a certification be filed as no such conference or attempt to confer was ever made by counsel for Plaintiff (Dkt #115, p. 3-8).

41. Further, Rule 37(a)(5) provides another roadblock to the award of sanctions to Plaintiff. Rule 37(a)(5) does provide that a successful movant for an order to compel discovery is entitled to expenses and attorney fees. The Rule, however, contains a mandatory prohibition of an award of expenses and attorney fees:

13

But the court *must not* order this payment if:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; [emphasis added]

(Rule 37[a][5][A][i]).

42. As pointed out by Mr. Personius, counsel for Plaintiff made absolutely no attempt to continue Mr. Evans' deposition without court action (Dkt #115, p. 3-8). In fact, and as set forth above, counsel for Plaintiff rebuffed three attempts by Mr. Personius to resolve the dispute over the scope of Mr. Evans' testimony. The first attempt was an offer to call Magistrate Judge Foschio during the deposition to resolve the issue. Plaintiff's counsel refused to do so.

43. After Mr. Personius reviewed the Deposition Guidelines, he offered to have the deposition go forward once he had a chance to confer with Mr. Evans about the Guidelines. Counsel for Plaintiff again refused to allow such a conference and cut the deposition short.

44. As set forth above, upon returning to his office, and prior to Plaintiff filing the motion to compel, Mr. Personius set forth explicitly in an email to counsel for Plaintiff that the deposition of Mr. Evans could continue with Mr. Evans answering all questions and Mr. Personius placing objections on the record as deemed necessary. Importantly, this email sets out exactly how counsel for Plaintiff wanted the deposition to be conducted in the first place. Prior to the filing of the motion to compel, Plaintiff had counsel's agreement that the deposition would be conducted as Plaintiff wanted. There was no need for a motion to compel.

45. Set forth in a reply is Plaintiff's argument that they attempted "in good faith to obtain the disclosure or discovery without court action:"

> Regarding the first point on the issue of conferral. The parties conferred on the record about the need for the instant motion, and plaintiff offered the non-party an opportunity to proceed on the record and follow the Foschio rules so as to avoid the instant motion. The non-party declined to do so and said "If you interpret those that

way, then fine. Go ahead and file your motion." See Dkt 92-4 at 43-51. Thus any claims by the non-party that plaintiff failed to confer in advance of the instant motion are wholly unsupported.

(Dkt #116, p. 3). Ignored by Plaintiff is that no attempt was made in good faith to obtain the discovery without court action. What Plaintiff's counsel wanted was an agreement that, contrary to how Mr. Personius had advised Mr. Evans, and without an explanation to Mr. Evans, Mr. Evans would answer all questions put to him. What Plaintiff wanted was not subject to discussion and his counsel refused to discuss it. Further, and as set forth above, prior to Plaintiff filing the motion to compel, Mr. Personius advised his counsel that the deposition could be continued in the manner Plaintiff wanted.

46. Magistrate Judge Foschio dealt with Mr. Personius' argument that Plaintiff terminated Mr. Evans' deposition notwithstanding Mr. Personius' offers to resolve the impasse over the questioning of Mr. Evans without motion practice as follows:

> Nor is there any merit to Personius's argument, Evans's Memorandum at 13-13; Personius Declaration ¶¶ 31-34, that Wischerath improperly terminated the deposition without first seeking advice from the undersigned or permitting Personius to privately consult with Evans to propose a means for moving forward with the deposition, which Personius later memorialized in an e-mail to Wischerath sent two hours before Wischerath filed the instant motion. Rather, a fair reading of the deposition establishes that Personius agreed Wischerath would file the instant motion, adding that Personius was "happy to respond to it on the basis of the record." Dkt 114-1 at 47.

(Dkt #121, p. 8).

47. Contrary to this statement and as borne out by the record, prior to Mr. Personius stating Plaintiff could file a motion, Plaintiff had refused two attempts by Mr. Personius to resolve the issue. Mr. Personius only agreed Plaintiff could file a motion after his two attempts to resolve the dispute were rebuffed by Plaintiff. Further, Plaintiff's threat of a motion must be viewed in the

15

context of the three earlier threats by Plaintiff to file discovery motions, none of which came to pass as the issues behind each were resolved.

**II. The Sanctions Order Failed to Consider the Purposes of an Order of Sanctions**

48. Sanctions were imposed on an attorney without a history of conduct meriting sanction or who committed conduct so blameworthy that a sanction was the appropriate remedy. The law is clear that sanctions are not mandatory. "The district court has discretion to impose appropriate sanctions when a person 'impedes, delays, or frustrates the fair examination of the deponent,' but the district court in no way is obligated to do so. Fed.R.Civ.P. 30(d)(2) ('The court *may* impose an appropriate sanction....' [emphasis added])." *Nebeker v. Nat'l Auto Plaza*, 643 F. App'x 817, 826 (10th Cir. 2016). The need to deter future misconduct by an attorney is a consideration in the determination of whether sanctions are appropriate. *Jones v. J.C. Penney's Dep't Stores, Inc.*, 228 F.R.D. 190, 198 (W.D.N.Y. 2005). S*ee also, Robbins & Myers, Inc. v. J.M. Huber Corp.*, No. 01-CV-00201S F, 2010 WL 3992215, at *3 (W.D.N.Y. Oct. 12, 2010) ("attorney's fees awarded as a sanction are not intended only as compensation of reimbursement for legal services, but also serve as a deterrent to abusive litigation practices and, as such, district courts have discretion in determining the amount of an attorney's fee awarded as a sanction.").

49. It should also be remembered that "sanctions 'act as a symbolic statement about the quality and integrity of an attorney's work—a statement which may have a tangible effect upon the attorneys' career.' [citation omitted]" *Adams v. Ford Motor Co*., 653 F.3d 299, 309 (3d Cir. 2011). Accordingly, Mr. Personius' reputation and unblemished record in his years of appearances before the United States District Court for the Western District of New York should be taken into account in determining whether, and to what extent, any sanction should be imposed in this action.

50. Far from egregious conduct, Mr. Personius' position as to the conduct of Mr. Evans' deposition was arrived at only after his research into the rules regarding depositions of representatives of organizations, and after several communications with Plaintiff's counsel as to the capacity in which Mr. Evans was to be deposed.

51. Once he reviewed the Deposition Guidelines, Mr. Personius realized that, contrary to his understanding, Mr. Evans must answer all questions with appropriate objections placed on the record. Having advised Mr. Evans that the deposition was to be conducted in a certain manner, all Mr. Personius wanted was a chance to explain to Mr. Evans that the planned protocol for objections had changed and that Mr. Evans would be expected to answer, if he could, all questions put to him. Plaintiff would not allow that consultation to take place. As a result, here we are, years later fighting over an issue that was eminently resolvable as everyone was assembled at the deposition. This should not be sanctionable.

**III. These Circumstances Make an Award of Sanctions Unjust**

52. It is clear that, prior to the deposition of Mr. Evans, Mr. Personius, having been recently brought into the case, made all reasonable efforts to ensure the subpoena served on Mr. Evans was complied with. Notwithstanding counsel for Plaintiff's position that Mr. Evans was subpoenaed in his individual capacity and not as a representative of the PBA, Mr. Personius complied with the document production aspect of the subpoena and provided over 1,000 pages of PBA documents and records to Plaintiff's counsel.

53. Notwithstanding the threats of Plaintiff's counsel to engage in motion practice regarding the deposition, but for a week when he was out of the office, Mr. Personius was agreeable to a quick rescheduling of the deposition of Mr. Evans. After threatening motions, it took Plaintiff's counsel almost two years to attempt to actually schedule the deposition.

54. Mr. Personius had a genuine concern over Mr. Evans answering questions as a representative of the PBA when he was being deposed in his individual capacity. Following research, he followed a course of action he believed to be proper and had explained to Mr. Evans. When the course was shown to him to be incorrect, he attempted to right it. Plaintiff's counsel would not allow that to take place. As a result, Plaintiff terminated the deposition to invoke unnecessary court intervention. Under these circumstances, sanctions should not be awarded.

## Conclusion

For all the foregoing it is respectfully submitted that the above objections to the Decisions and Orders filed as Dkt # 121 and 136, granting sanctions against Mr. Personius and setting the amount of the sanction should be sustained and the Decisions and Orders reversed and vacated.

Dated: Buffalo, New York
May 15, 2025.

**/s/ Joseph M. Guerra, III**
Joseph M. Guerra, III, Esq.
PERSONIUS MELBER LLP
*Attorneys for Non-Party Witness*
*John Evans*
2100 Main Place Tower
350 Main Street
Buffalo, NY 14202
(716) 855-1050
jmg@personiusmelber.com

TO: Melissa D. Wischerath, Esq.
LIPSITZ GREEN SCIME CAMBRIA LLP
*Attorneys for Plaintiff*
42 Delaware Avenue, Suite 120
Buffalo, NY 14202

## Certification

Pursuant to Local Rule 72(c), the undersigned certifies that the above objections do not raise any new legal/factual arguments.

**/s/ Joseph M. Guerra, III**
Joseph M. Guerra, III, Esq.